KATHERINE GRAHAM HILL *vs.* ELLEN A. HILL, EX'X
of RICHARD M. HILL, and Guardian of BESSIE
HILL.

*Bill of Revivor by Defendant to revive a decree after the death
of the Complainant—Question as to the right of a father after
a decree of Divorce giving him under certain Conditions the
Custody of an infant Child, to exercise the power conferred
upon him by the Statute 12 Charles 2nd, sec. 24, of providing
by will for the guardianship of said Child—Question as to the
power of the Court under Art. 16, sec. 26, of the Code, to
modify or take away the power conferred upon the testa-
mentary Guardian.*

Under a decree for a divorce *a vinculo matrimonii,* the care, custody and con-
trol of an infant daughter of the parties was committed to the father, (the
complainant,) until the further order of the Court.  The decree also pro-
vided that the mother, (the defendant,) should have access to the daughter
"twice during each year, at such times as said defendant shall designate,
and at such place or places as shall afford said defendant reasonable oppor-
tunity and facility for making such visits."  By arrangement between the
parents, the visits of the mother to the daughter were specifically provided
for.  The father subsequently died, leaving a will by which he gave the
sole guardianship of the daughter to his sister.  The latter duly qualified
as guardian, and assumed the charge and custody of the daughter, and
refused to allow the mother access to her.  On a bill of revivor filed by the
mother, asking for a revival of the original proceedings in the divorce case,
and for the enforcement of the provisions of the decree securing her the
right to visit her child, it was HELD :

That the complainant, although a defendant in the original cause, and
the decree passed therein was against her, had rights and interests under
the decree which entitled her to have the same revived.

The statute 12 Charles 2nd, ch. 24, confers upon the father the power of dis-
posing by last will and testament of the custody and tuition of his minor

child, and the Code, Art. 16, sec. 26, provides that in all cases where a divorce is decreed, "the Court shall have power to order and direct who shall have the guardianship and custody of the children." HELD :

1st. That the statute of 12 Charles 2nd, ch. 24, has the same force and effect as if it had been enacted by the Legislature. It forms a part of the statute law of the State, and must be construed in connection with the subsequent legislation prescribing the powers of the Court in cases of divorce, to have and exercise supervision over the children of the separated parents, and to order and direct who shall have the guardianship and custody of them.

2nd. That in this case the Court having directed that as between the parties litigant the father should have the care and custody of the child "until the further order of the Court," or in other words, placed the child in the custody of the party who is at the common law the guardian by nature, there is no reason why he had not the power to appoint a testamentary guardian.

3rd. That construing together the *Statute of Charles* and the provisions of the Code as *in pari materia*, they must both have operation and effect as far as practicable and are consistent with each other.

4th. That the effect of the decree was not to take away the power of the father to appoint a testamentary guardian ; but while this power continued, it could be exercised only in subordination to the power and authority conferred on the Court to supervise and direct who should have guardianship and custody, and which was expressly reserved by the terms of the decree.

5th. That the authority and rights of the testamentary guardian as to the custody of the child were held in subordination to the power of the Court, in the same manner as they were held by the father in his life-time.

6th. That the Court in the exercise of its jurisdiction under the above Article of the Code had power to modify or change the previous order or decree in this respect, and in its discretion to change the custodian of the child and place her in the care and custody of some other person.

7th. That under the facts and circumstances of the case, the child ought not to be taken from the custody of the aunt and placed in that of the mother.

8th. That nothing new having transpired since the original decree was passed to show that the child could be in any manner injured, or her welfare and happiness endangered, by allowing her mother access to her, a decree ought to be passed reviving the decree which had abated by the death of the father, and directing that the mother should have the same privilege of access to her daughter which was secured to her by the original decree.

9th. That the Circuit Court might prescribe in its decree, if it should be deemed' expedient, the times and places when and where such access should be allowed; it being competent for said Court at any future time, when from a change of circumstances or from other cause they should consider it proper, in their discretion to alter or modify their decree in this respect..

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART,. ALVEY and ROBINSON, J., for the appellant, and submitted on brief for the appellee.

*Matthew H. Carpenter*, for the appellant.

*Bernard Carter*, for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

Upon the bill of complaint of the late Richard M. Hill' against his wife, Catharine G. Hill, charging her with adultery, a decree was passed by the Circuit Court of' Prince George's County on the 5th day of August, 1875, granting him a divorce, *a vinculo*, from his said wife. The decree directed "that the care, custody and control of' Bessie Hill, the daughter of said complainant and defendant, an infant, be and is hereby committed to the complainant, Richard M. Hill, until the further order of the Court in the premises, and that the defendant, Catharine G. Hill, be permitted by said complainant to have access to,. and visit said Bessie Hill, her daughter, twice during each year, at such times as said defendant shall designate, and at such place or places as shall afford said defendant. reasonable opportunity and facility for making such visits."

By an arrangement between the parents, it was agreed that the visits of the mother to the child should include the 17th day of July, the birth-day of the child, and the Christmas holidays, in each year, and in pursuance of this arrangement the mother was permitted to have the child for two days about Christmas, in 1875, at a hotel in Springfield, Massachusetts, where her father, an officer in the army, was then stationed.

Richard M. Hill died on the 25th day of March, 1876, at Springfield, leaving his last will and testament, by which he devised and bequeathed all his estate and property to his daughter, Bessie Hill, and his sister, Ellen A. Hill, equally, and appointed his sister, Ellen A. Hill, the appellee, sole guardian of his daughter, Bessie Hill, who duly qualified as such guardian, and has ever since had charge and custody of said infant.

On the 10th of January, 1877, the appellant filed her bill of complaint in this case against the appellee, alleging the facts hereinbefore stated, and further alleging that the appellee was aware of the terms of the decree, and of the arrangement between the parties as to the times of visitation by the appellant, and that the appellee, notwithstanding the terms of the decree in that behalf, refuses to allow to the appellant all access to her child, and has informed the appellant of her intention to deny such access in the future.

The bill prays a revival of the proceedings and decree in the divorce case, and alternative relief as follows:

1st. That the appellant have custody of the child, and 2nd, if that cannot be obtained, then that the provisions of the decree, securing her access to and right to visit with her child, may be enforced against the appellee, and for general relief.

The answer admits the material allegations of the bill and further admits "that the respondent, has, through her counsel, informed the complainant that she will not

allow her to have access to, or visit said Bessie, and that she means to adhere to this determination, unless she is compelled by the peremptory order of a Court having proper jurisdiction in the premises to recede from it,'' and assigns her reasons for such refusal.

The answer further denies the jurisdiction of the Court to pass any of the orders and decree prayed for, and protests that, if the Court had such jurisdiction, all proper considerations forbid its exercise.

The cause was submitted upon the bill and answer, and certain affidavits filed by the appellant; and the present appeal is taken from the decree of the Circuit Court dismissing the bill.

It is contended on the part of the appellee, that the appellant has no standing in Court entitling her to maintain a bill of revivor.

On this question we entertain no doubt. Though she was a defendant in the cause and the decree was against her, it is evident she has rights and interests under the decree which entitle her to have the same reviewed.

The terms and provisions of the decree above recited secured to her the most precious and important right and privilege of having access to, and visiting her child. This right being now denied can be secured to her and enforced only by a proceeding of this kind, whereby the decree in this respect may be executed in her favor.

In 2 *Daniell's Ch. Pl. and Practice,* 1617, the rule on this subject is thus stated, "attempts have been made to limit the right of a defendant to revive to cases in which there has been a decree for an account, in support of which a *dictum* of Lord HARDWICK in an anonymous case in *Atkyns* has been relied upon ; but it seems to be now held, that it is not in cases of account only that a defendant can revive, but that he may do so whenever he has an interest." And in *Story's Eq. Pl.,* sec. 372, the author after referring to the decision of Lord HARDWICK, says, " But the principle

has been by subsequent decisions, extended to every case in which the defendant can derive a benefit from the further proceedings."

The right of the appellant to institute this suit being clear, we are next to consider the extent and nature of relief to which she is entitled.

And first, as to the custody of the child.

By the decree the custody of the child was confided to the father, and he by his last will appointed his sister, the appellee, to be sole guardian of his daughter, expressing his trust that the guardian thus appointed "may be able in all things to fill a mother's part by her." There is nothing in the record to show that this trust is not faithfully performed, or any ground for supposing that the guardian is not, in all respects, a competent and suitable person to have the care and custody of the child.

Had Mr. Hill the power to appoint a testamentary guardian?

The Statute 12 Charles 2, ch. 24, which is in force in this State, confers upon the father the power of disposing by last will and testament of the custody and tuition of his minor child. Was the operation of this statute suspended, and the power of Mr. Hill to appoint a testamentary guardian for his daughter, taken away by the provisions of the Code, Article 16, sec. 26, and the exercise by the Court of the jurisdiction thereby conferred?

The Code provides that in all cases where a divorce is decreed, "*the Court shall have power to order and direct who shall have the guardianship and custody of the children.*"

The argument on the part of the appellant is, that the parents having been divorced by the decree, the child became the ward of the Court, and the right of the father to appoint a guardian by last will no longer existed.

We do not entertain this opinion. The Act of 12 Charles 2nd before referred to, has the same force and

effect as if it had been enacted by the Legislature, it forms a part of the statute law of the State, and must be construed in connection with the subsequent legislation prescribing the powers of the Court in cases of divorce to have and exercise supervision over the children of the separated parents, and to order and direct who shall have the custody and guardianship of them. It is very clear that cases may arise in which, by the exercise of this jurisdiction, the power of the father to appoint a testamentary guardian would be entirely suspended or taken away; as in the case whereby the decree the custody of the children is given to the mother. In such case it could not be maintained that the father would have the power by last will to appoint some other person guardian, and that the person so appointed would be entitled to the custody of the children, or could deprive the mother of their custody, and thus interfere with the jurisdiction of the Court and defeat and annul its decree.

But in this case the Court has directed that as.between the parties litigant the father should have the care and custody of the child, "until the further order of the Court," or in other words, placed the child in the custody of the party who is at the common law the guardian by nature. In such case we see no good reason why he had not the power to appoint a testamentary guardian, construing together the Statute of Charles, and the provisions of the Code, as *in pari materia* they must both have operation and effect as far as practicable, and are consistent with each other.

In our judgment, the effect of the decree was not to take away the power of Mr. Hill, the father, to appoint a testamentary guardian; but while this power continued, it could be exercised only in subordination to the power and authority conferred on the Court to supervise and direct who should have the guardianship and custody, and which was expressly reserved by the terms of the decree.

The authority and rights of the testamentary guardian, as to the custody of the child, are held in subordination to the power of the Court, in the same manner as they were held by Mr. Hill in his life-time.

We do not, therefore, doubt or question the jurisdiction and power of the Court to modify or change the previous order or decree in this respect, and in its discretion to change the custodian of the child, and place her in the care and custody of some other person.   This power belongs to the Court in the exercise of its jurisdiction under the Article of the Code before referred to.   It is unnecessary, however, to discuss this question further in the present case, because there is no good reason or cause shown to justify us in removing the child from the care and custody of the appellee, to whom she was confided by her late father, and who, as we have before said, appears to be in all respects a suitable person to have the care and custody of the child.

After the fullest and most careful consideration of the subject, and of all the facts and circumstances of the case as disclosed in the record, we do not think the child ought to be taken from the custody of the appellee and placed in that of the appellant.

Without entering at length into a statement of the reasons which control our judgment and discretion in this respect, we think the welfare of the child, which is the paramount consideration, will be best promoted by leaving her in the care of the appellee, and are of opinion the Circuit Court was right in refusing to grant the prayer of the bill in that respect.   But we do not concur in the conclusion reached by the Circuit Court that the appellant ought to be denied all right of access to her child.   This privilege was given to her by the original decree, passed by a Court having before it all the facts as disclosed in the proceedings for divorce ; nothing has since occurred so far

as appears in the record, to require or to justify any modification of the decree in this respect.

We do not think that any sufficient reasons are assigned in the appellee's answer for now refusing to the mother of the child the same privilege accorded to her by the original decree.

In determining this question, the main and paramount consideration is the happiness and welfare of the child, but in our judgment this will not be in any manner impaired or endangered by permitting her mother to have access to her, at suitable and convenient times and places, and under reasonable safeguards.

While the welfare of the child is certainly the primary object to be attained, and is not to be sacrificed or placed in jeopardy, in dealing with a question of this kind it seems to us there are other considerations not to be lost sight of. Some regard must be had for the tender relation which the appellant bears to her child. We cannot divest ourselves of the feelings of our common humanity, and ought not, if we could, wholly to disregard the natural claims upon our consideration of the mother's affection for her offspring.

In this case, whatever may have been her former transgression, there is no evidence in the record that she is leading a wicked or disreputable life ; on the contrary her associations are with respectable people. Her home is in the house of her father, Gen'l Ramsay, a highly esteemed citizen of Washington. She is a member of his family, which consists of her father, mother and two sisters, all worthy and estimable persons, occupying a high social position.

Under these circumstances it seems to us that the apprehensions on the part of the appellee, that her ward, now a child about eight years of age, could be in any manner injured, or her welfare and happiness endangered by allowing her mother access to her, are not well founded.

These apprehensions doubtless have their origin in the affectionate interest the appellee feels for the child, but in our opinion they are not justified by anything in the record. To the mother this is a privilege of the dearest and most precious kind, and we think would neither harm the child nor interfere with the just rights of the appellee, or tend to undermine or destroy her rightful authority and influence over her ward.

For the reasons stated, we are of the opinion there was error in the decree of the Circuit Court dismissing the bill. It ought to have been retained, and a decree passed reviving the decree of August 5th, 1875, which has abated by the death of Richard M. Hill, and directing that the appellant have the same privilege of access to her daughter, Bessie Hill, which was secured to her by the original decree.

To that end the decree of the Circuit Court from which this appeal was taken will be reversed, and the cause remanded.

It is left to the judgment and discretion of the Circuit Court to prescribe in its decree, if it shall be deemed expedient, the times and places when and where such access shall be allowed. Of course it will be competent for the Circuit Court at any time hereafter, when from a change of circumstances, or from other cause, they shall consider it proper, in their discretion, to alter or modify their decree in this respect.

*Decree reversed, and*
*cause remanded.*

(Decided 28th June, 1878.)