## JOHN W. PANGLE

### *vs.*

## MYRTLE V. PANGLE, Now MYRTLE V. BROOKS.

*Divorce: custody of children; jurisdiction of court; may revise decree as to children, even after term; children's welfare.*

Under section 38 of Article 16 of the Code, the court that decrees a divorce may revise its decree relating to the disposition of the children, even though the application be made after the term at which the decree was passed.                   p. 169

In such cases, the primary concern is to make such an award of the child's custody as will best protect its welfare.        p. 170

Where the custody of a female child is sought by the mother after a divorce, granted because of her adultery, the evidence should be very clear as to the propriety of removing the child from the custody of the father, to whom it had been judicially awarded, and committing her to the mother.              p. 170

*Decided March 6th, 1919.*

Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS and URNER, JJ.

*Albert S. J. Owens* and *Robert H. Carr,* for the appellant.

*Daniel C. Joseph* and *Howard Bryant,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant and appellee were married on July 29, 1911, and they were divorced on December 11, 1917, by the Circuit Court of Baltimore City, at the suit of the husband, on the ground of the wife's adultery. By the decree of divorce the custody of the five year old daughter of the parties, the only child born of the marriage, was awarded to the father. About two weeks after the decree was passed the divorced wife married the man with whom she was alleged and proven to have committed the adultery on account of which the marriage was dissolved. Four months later she petitioned the Court which had granted the divorce to modify the decree by rescinding the award of the child to its father's custody and by providing that its mother should have charge and care of it for the future in accordance with an agreement which she claimed to have had with the father to that effect prior to the passage of the decree. The petition alleged a distinct understanding between the parties, when the suit for divorce was pending, that the decree should be silent as to the disposition of their daughter, and that the father should have possession of the child during the winter of 1917, taking her with him to Cuba for that purpose, but should return with her in the spring of 1918 and deliver her into the custody of her mother. It was further averred that the child was brought back to Baltimore by her father in April, 1918, and they were met by the petitioner who came there, from her new home in Hazelton, Pennsylvania, for the purpose of receiving her daughter, but that while she was allowed to have her for periods of a day and night at a time during the following week, the father finally placed the child in a school and home for young girls in the suburbs of Baltimore, from which he will not permit her to be removed. There were allegations to the effect that the petitioner is desirous and capable of having the care and custody of the child, and her second husband is willing and has the means to provide for its support, and that her former husband is a man without a home or any permanent place of abode, being a race horse owner and trainer whe

attends horse races throughout the country. It was also alleged that the petitioner did not learn of the provision of the decree awarding the custody of the child to its father until shortly before the present petition was filed.

The father's answer to the petition denied that there had been any agreement as to the custody of the child, and averred that he had no desire or intention to prevent the mother from visiting their daughter on all reasonable occasions, and that he was willing, before she was placed in the school mentioned in the petition, to allow the mother to take the child to her home for a short visit, but he learned that she was preparing to surreptitiously take her to Pennsylvania and keep her there permanently to the exclusion of the respondent's rights, and he therefore placed his daughter in the institution referred to, paying $150 in advance for her care and education there for the period of six months. The answer also emphasized the fact that the petitioner was divorced from the respondent because of her adultery with the man who is her present husband, and suggested to the Court that the proposed modification of the decree would not be for the best interests of the child.

The testimony taken at the hearing below need not be discussed in detail. Its effect in part was to prove that the petitioner is living with her present husband in a house in Hazelton, Pennsylvania, which they occupy and maintain jointly with three other persons, and that the respondent is able and well qualified personally to have the care and custody of his daughter, but his business requires him to spend a number of months every year away from Baltimore in attendance upon races in this country and in Cuba. A considerable portion of the evidence was directed to the habits and conduct of the petitioner prior to her divorce from the respondent. Apart from the adultery which occasioned the divorce, there were certain phases of her life during that period which were not consistent with a proper appreciation of her duty and responsibility as the mother of the child then in her care.

The lower Court modified the original decree by providing that the care and custody of the child be awarded to its mother for the months of July and August, 1918, and to its father for the two succeeding months, and then to its mother until the further order of the Court, each of the parents to be responsible for the care and maintenance of the child during the respective periods of their custody. From this decree the father has appealed.

It is provided by section 38 of Article 16 of the Code that in all cases where a divorce is decreed, the Court passing the decree shall have "power to order and direct who shall have the guardianship and custody of the children, and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children." In view of this provision we can have no doubt as to the authority of the Court below to revise its decree, in so far as it relates to the disposition of the child, even though the application for such revision was made after the expiration of the term at which the decree was passed. But whether the authority should have been exerted in this case to the extent indicated by the modifying decree is a question upon which we have not been able to reach an affirmative conclusion.

There has been no important change in the situation of the parties since the decree of divorce except the prompt marriage of the defendant to the co-respondent. The home in which the mother desires to rear the child is one maintained by the man who was her partner in the immorality by which her former home was ruined. The father of the child is as able and anxious now to care for her as he was at the time of the passage of the original decree. No change has since occurred in his habits or circumstances to render him less qualified to exercise the right, accorded him by the decree, of having the companionship and care of his daughter. The evident reason for the award of the child to his custody at the time of the divorce was the fact of the mother's adultery.

No effort was then made by the mother to retain control of her daughter, but she was content to allow the child to go with its father to Cuba for the winter while she married the paramour with whom she had committed the infidelity which caused the divorce. The present application for a change of the custody is not supported by the proof of such conditions as are sufficient, in our opinion, to justify such an exercise of judicial discretion.

The primary concern in cases of this nature is to make such an award of the custody of the child as will promote its highest welfare. The natural feelings and legitimate interests of the parents are also to be duly considered. But in a case where the custody of a female child is sought by a mother, after a separation caused by her adultery, the evidence should be very clear as to the propriety and wisdom of such a course before the child is removed from the care of the father to whom it has been judicially awarded and by whom its interests are being properly protected. In the present case we do not regard the evidence as sufficient to prove that the welfare of the child requires such a transfer of custody. As regards the conflicting interests of the parents, we think the claim of the father is the stronger under the special circumstances of the case. Having lost his wife through her misconduct, he ought not to be deprived of the custody of his daughter and subjected to the humiliation of surrendering her to the support and control of the author of his marital misfortune. If he is permitted to have charge of the child, she will be kept, as he testified, in the institution in which he had placed her, where she will have the constant benefit of refining and protective care and influences, and where she will be accessible to both parents. There has been a commendable disposition on the part of the respondent to afford his former wife frequent opportunities for association with their child, and this privilege should be properly secured and regulated by the decree. The respondent testified that he lives in Baltimore from April to December in each year, and

that he will give his personal attention to his daughter's welfare, and spend his summers with her during the periods of the school vacations.  The interests of the child will thus be safeguarded and both parents will be able to visit her readily if the claim of the father to her custody is sustained. Subject, therefore, to provisions for access of the mother to the child, at such times as the Court below may determine, the modifying decree should continue in force the original award.

This conclusion is in accord with the action taken in other cases of the same nature which this Court has had under review.  In *Hill* v. *Hill,* 49 Md. 450, and *Kremelberg* v. *Kremelberg,* 52 Md. 553, the custody of the children was in each instance awarded to the husband by the decree of divorce passed on the ground of his wife's adultery, and in the unreported case of *Poehlman* v. *Poehlman,* 130 Md. 695, it was held, that during the pendency of a suit for divorce because of adultery by the wife, the Court may retain jurisdiction over the children and direct that they remain in their father's custody.  The view we have reached in this case is also in harmony with the general trend of decisions in other jurisdictions upon similar questions.  Many such cases are cited in a note to *Re Pryse* (Kan.), 41 L. R. A. (N. S.), 601.

The decree will be reversed and the cause remanded to the end that a decree may be passed in accordance with this opinion.

*Decree reversed, with costs, and cause remanded.*