# JOSEPH T. ENGLAND *vs.* RHETT MILLER MEGEAR.

## *Custody of Child—Parents Divorced.*

That the mother of a child, after a divorce from the child's father, married a divorced man, and lived with him, in violation of the teaching of the church in which the child, by agreement of his parents, were being brought up, and in which he had been confirmed, was not sufficient reason for refusing to allow the child, whose custody was by the divorce decree vested equally in the father and mother, to spend part of his Christmas vacation with the mother.

*Decided April 10th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Petition by Rhett Miller Megear against Joseph T. England for an order authorizing a visit to her by her son, Joseph T. England, Jr., From an order granting the prayer of the petition and dismissing his cross-petition, said Joseph T. England appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, OFFUTT, and DIGGES, JJ.

*Vernon Cook*, for the appellant.

*Stuart S. Janney*, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is by the father from an order of the Circuit Court of Baltimore City permitting his son, now about thirteen years of age, to visit the child's mother in New York City, from whom the father was divorced *a vinculo matrimonii*.

On the 3rd of April, 1917, the court below passed a decree divorcing the appellant from the appellee, and, in accordance with an agreement between the appellant and the appellee, the court further decreed that the custody of Joseph Townsend England, Jr., their minor child, should be "vested equally in" the appellant and appellee; that said child should not be removed from the State of Maryland "except under the order of" the court; that the court retained jurisdiction in the case for the purpose of passing such further order in regard to the custody and care of such infant as might appear to be for his benefit and advantage; that the "legal guardianship of said" infant "be vested in Joseph T. England," the plaintiff, and that he be charged with his maintenance and support.

The appellant and the appellee were members of the Protestant Episcopal Church, and prior to their separation attended Mt. Calvary Church, in Baltimore City. After their separation, the appellee went to live with her mother, and the appellant, his maiden aunt, and his child, have lived in Baltimore City. The child attended sunday school and the

choir at Mount Calvary Church, and was confirmed in that
church in 1920.   In the fall of 1922 he was sent to the
Donaldson School, which is a church school, connected with
and under the control of Mount Calvary Church, where he is
given religious training in accordance with the teaching and
doctrines of the Protestant Episcopal Church.   Ever since
the separation of the appellant and appellee the child has
spent a part of his vacations with his mother, either at her
home in New York or elsewhere.

   In October, 1923, the appellee married Thomas J. Megear,
a resident of New York City, who was a divorced man, and is
now living with her said husband in the City of New York.
In November, 1923, the appellee wrote to the appellant with
the view of having their child spending a part of his Christ-
mas vacation with her in New York, but the appellant replied
that he was not willing for him to do so, whereupon the
appellee filed a petition in the court below praying the court
to pass an order authorizing the said Joseph T. England, Jr.,
to visit her in New York on the 2nd of January, 1924, pro-
vided he was returned to his school on or before January 8th,
"when the school opened after the holidays."   The appellant
filed an answer to said petition, and also a cross-petition, in
which, after referring to the provisions of the decree of 1917,
he alleged:

   "2.   That subsequent to the passage of said decree
   it was agreed between the parties hereto that the actual
   custody of said child should be given to the father,
   and that ever since the passage of said decree * * *
   your petitioner has had the actual custody of his son.
   It was also agreed between the parents that the reli-
   gious training and education of said son should be in
   accordance with the teaching and doctrine of the Prot-
   estant Episcopal Church, and that he should be sent
   to a school identified with that church where he would
   receive a religious training of the kind desired.   This
   agreement was made at the earnest request of the
   father and that the mother fully consented thereto,
   and that, in accordance therewith, the infant son above
   mentioned has for some time been a student at the

Donaldson School, which is a school conducted by
persons identified with the church above mentioned
and where the boy is receiving a religious training in
accordance with the teachings and doctrine of said
church.

"3. That for some years past the defendant has
lived in the City of New York; that she has visited
her son in Baltimore, and that the son has been per-
mitted to spend a portion of his holidays with his
mother, but that recently and since the last visit of
the son to the home of his mother in New York,
said mother has remarried with a certain Thomas J.
Megear, who is himself a divorced man, and that the
defendant, a divorced woman and the party at fault
in the divorce case and against whom the divorce was
decreed, having remarried with a man himself also
divorced, is necessarily leading a home life entirely
incompatible with the teaching and doctrine of the
Protestant Episcopal Church, and that to permit the
plantiff's son, who is now at the impressionable age of
thirteen years, to spend a part of his time at his
mother's home, under the circumstances above men-
tioned, would, in the opinion of your petitioner and in
the opinion of those who are looking after the reli-
gious training of said boy, be extremely detrimental to
such training and would necessarily subject him to
influences wholly adverse to and in conflict with the
religious training which he is receiving and upon
which the parents had agreed at the time of the pas-
sage of the decree of divorce."

The prayer of the cross-petition was (1) that the decree of
1917, in so far as it relates to the care and custody of said
infant, be modified so as to give the care and custody "of said
son and his religious training entirely to the petitioner," and
(2) "that the mother be permitted to visit the child, but the
child shall not be permitted under the circumstances herein-
before mentioned to live in the home of the mother for any
portion of his time." The appellee answered the cross-peti-
tion denying that there was any agreement that the "actual
custody" of the child should be given to the father, or any

agreement "other than that the said child should be brought up as an Episcopalian, and should attend school at Donaldson School." The answer further denies that the home life of the appellee "is incompatible with the teaching and doctrine of the Protestant Episcopal Church, or any other Christian belief," and "that her home will be detrimental to her child's training and subject him to adverse influences," and alleges that appellee's "married life with her present husband is happy, the surroundings are dignified and in every way in consonance with the proper training and development of her son."

At the hearing of the petition and cross-petition the mother offered evidence tending to show that she and her present husband have a comfortable home in New York; that her son is attached to her and fond of her husband, and that he wanted to come to her for a part of his Christmas holidays, while the father, the rector of Mt. Calvary Church, and the assistant head master of Donaldson School, testified that the marriage of the mother to her present husband, while legal, was contrary to the teaching of the church to which the son belongs, and that in their judgment it would be detrimental to the child to permit him to live in a home that is at variance with his religious and moral training.

It thus appears from the cross-petition, and the evidence shows, that the only ground upon which the father objects to the boy visiting the home of his mother is that her remarriage was contrary to the teaching of the church to which the child belongs, and that to visit her home under such circumstances would tend to counteract his religious and moral training. The learned court below took the view that the reasons assigned were not sufficient to justify a court in denying the mother the relief asked for in her petition, and in that view we must concur.

It is urged in the brief of counsel for the appellant that "The courts should not pass any order which interferes with the religious training which a child is receiving," and that "the undoubted effect of the decision of the lower court in

this case will be to estrange the boy from the Protestant
Episcopal Church. A boy of his age naturally thinks that
what his mother does must be right. When he sees his
mother, divorced by her first husband, living with a second
husband, this example will undoubtedly lead him to believe
that the religious teaching of the Donaldson School is wrong,
and a little reflection should convince any one that the clergy-
men who testified are absolutely right when they say that
such conditions interfere with what they consider proper re-
ligious training." This Court might well agree that ordi-
narily the courts should do nothing to interfere with the re-
ligious training of children, but it by no means follows that
a short visit to his mother's home would have that effect upon
a child. If, as argued, a child of the age of the infant in
this case "naturally thinks what his mother does must be
right," then the injury to the child sought to be avoided has
already been done, and the possibility that a short visit to
her home would add to his estrangement from the moral and
religious training he has received is too remote to warrant a
court in denying to the mother and child the companion-
ship they both desire. In the case of *Hill* v. *Hill*, 49 Md.
450, CHIEF JUDGE BARTOL, speaking for the Court, said:
"While the welfare of the child is certainly the primary ob-
ject to be attained, and is not to be sacrificed or placed in
jeopardy, in dealing with a question of this kind, it seems
to us there are other considerations not to be lost sight of.
Some regard must be had for the tender relation which the
appellant bears to her child. We cannot divest ourselves of
the feelings of our common humanity, and ought not, if we
could, wholly so disregard the natural claims upon our con-
sideration of the mother's affection for her offspring." See
also *Pangle* v. *Pangle,* 134 Md. 170, where this Court said:
"The primary concern in cases of this nature is to make such
an award of the custody of the child as will promote its
highest welfare. The natural feelings and the legitimate in-
terests of the parents are also to be duly considered."

In this case the evidence shows that the father is actuated solely by a most commendable interest in and solicitude for the welfare of his child, for whom he manifests a deep affection, but we do not feel that the reasons he assigns for his attitude are sufficient, under the circumstances, to justify this Court in depriving the mother of the right granted her by the order of court from which this appeal was taken.

*Order affirmed, with costs.*