488 A.2d 157

Cheryl Ann EVANS

v.

Donald Lee EVANS.

No. 81, Sept. Term, 1984.

Court of Appeals of Maryland.

Feb. 21, 1985.

G. Clifton Patterson III, Rockville (McCarthy, Wilson & Ethridge, Rockville, on brief), for appellant.

Donna C. Aldridge, Hyattsville, for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

The question in this case is whether, as part of a divorce proceeding, the court is authorized to award visitation rights to a nonadoptive stepmother of a minor child.

## I

Cheryl and Donald Evans were married in June of 1975. For six months prior to the marriage, Donald's child by an earlier marriage, then eighteen-month-old Jason, was in Cheryl's care. The parties separated in January of 1980. For seven months thereafter, Jason lived with Cheryl. In August of 1980, Jason went to live with his father.

In April, 1981, Donald filed a bill of complaint for divorce in the Circuit Court for Prince George's County. Cheryl answered and filed a cross-bill for divorce, requesting, among other things, liberal visitation rights with Jason, which Donald opposed. The court (Johnson, J.) granted visitation rights between Jason and Cheryl. On appeal, the Court of Special Appeals, in an unreported opinion, vacated that part of the decree which granted visitation rights to Jason. The court concluded that under Maryland Code (1980 Repl.Vol.), § 3–602(a)(4) of the Courts and Judicial Proceedings Article, "child visitation rights do not extend to a class of individuals broader than biological parents, adoptive parents, and grandparents." We granted certiorari to consider the important issue of statutory interpretation raised in the case.

## II

Until its recent recodification, § 3–602(a) of the Courts Article provided in pertinent part:

"A court of equity has jurisdiction over the custody ... [and] visitation ... of a child. In exercising its jurisdiction, the court may:

(1) Direct who shall have the custody ... of a child;

. . . . .

(4) Determine who shall have visitation rights to a child. *At any time following the termination of a marriage, the court may consider a petition for reasonable visitation by one or more of the grandparents of a natural or adopted child of the parents whose marriage has been terminated, and may grant such visitation if the court believes it to be in the best interests of the child ....*"[1] (Emphasis supplied.)

The italicized language was added to the statute by ch. 276 of the Acts of 1981.

In reversing the lower court's visitation award, the Court of Special Appeals said:

"If ... the Legislature had intended Section 3–602(a)(4) to empower equity courts with virtually unlimited discretion in determining the class of individuals entitled to child visitation rights, there would have been no logical rationale for the 1981 legislative amendment to Section 3–602(a)(4) extending the child visitation rights to grandparents.

... The appellee's broad interpretation of the first sentence of Section 3–602(a)(4) is inconsistent with a plain reading of the second sentence in this statutory provision. The obvious import of the 1981 amendment to Section 3–602(a)(4), which included grandparents in the class of individuals entitled to have child visitation rights, runs contrary to a legislative intention to grant an unlimited

---

**1.** Effective October 1, 1984, these provisions were recodified as Maryland Code (1984) §§ 1–201 and 9–102 of the Family Law Article.

discretionary power in the equity court to grant visitation rights to anyone the court desires. Unlike the 1981 amendment of Section 3–602(a)(4) applicable to grandparents, the Legislature has not seen fit to explicitly expand the child visitation rights to either stepparents or to former stepparents. There is no existing case law in Maryland which grants child visitation rights either to stepparents or to former stepparents."

The Court thus concluded that the 1981 amendment with respect to visitation by grandparents dictated a reading of the balance of § 3–602(a)(4) as allowing visitation only by a parent. An examination of the legislative history of § 3–602(a)(4) convinces us that the court was wrong in so holding.

## III

■ Chapter 262 of the Acts of 1841, which enabled courts to grant limited and absolute divorces, also conferred upon them the authority to determine "who shall have the guardianship and custody of the children." [2] That this authority encompassed the power to grant visitation rights is well established. In *Pangle v. Pangle,* 134 Md. 166, 106 A. 337 (1919), the Court, after declining to transfer custody from a father to a mother, observed, "[t]here has been a commendable disposition on the part of the respondent to afford his former wife frequent opportunities for association with their child, and this privilege should be properly secured and regulated by the decree." *Id.* at 170, 106 A. at 338. For other cases approving visitation rights in a decree, *see Hild v. Hild,* 221 Md. 349, 157 A.2d 442 (1960); *Barnard v. Godfrey,* 157 Md. 264, 145 A. 614 (1929); *England v. Megear,* 145 Md. 574, 125 A. 731 (1924); *Hill v. Hill,* 49 Md. 450 (1878).

After *Murray v. Murray,* 134 Md. 653, 107 A. 550 (1919) held that courts could not determine guardianship or custody until after a divorce was decreed, the General Assembly

---

**2.** This provision now appears as § 1–201 of the Family Law Article.

responded with the enactment of Ch. 573 of the Acts of 1920. *See Hood v. Hood,* 138 Md. 355, 362, 113 A. 895, 898 (1921). That statute, later codified as Code (1957, 1973 Repl.Vol.), Art. 16, § 66(a), read as follows:

> "The several equity courts of this State shall have original jurisdiction in all cases relating to the custody or guardianship of children and may on bill or petition filed by the father or mother or relative or next of kin or next friend of any child or children direct who shall have the custody or guardianship of such child or children, and who shall be charged with his, her or their support and maintenance, and may from time to time thereafter annul, vary or modify its decree or order in relation to such child or children...."

These provisions, while again referring only to "custody" and "guardianship," clearly encompassed visitation.[3] Chapter 573 became § 3–602 of the Courts Article, that article having originally been enacted by ch. 2 of the Acts of 1973 (Special Session). The recodified xx provision did not retain the limiting reference "on the bill or petition filed by the father, mother, relative, next of kin, or next friend ... or by [a] public welfare official." Thus, no enumeration of petitioners appeared when ch. 317 of the Acts of 1975 amended § 3–602 to explicitly confer jurisdiction upon courts to determine "who shall have visitation rights to a child."

---

**3.** Chapter 722 of the Acts of 1963 enacted new provisions relating to paternity proceedings, including Code (1957), Art. 16, § 66H(b), which read, in part:

> "The Court may include in the order any other provision, directed against any party to the proceeding, pertaining to the custody and guardianship of the child, *visitation privileges with the child* ... or any other matter which may be for the general welfare and best interests of the child, to the same extent and as fully as if the child were a legitimate child, *all in accordance with the inherent jurisdiction of courts of equity over minors and the jurisdiction and power conferred by Section 66 of this Article....*" (Emphasis added.)

Chapter 678 of the Acts of 1968 added Code (1957, 1966 Repl.Vol.) Art. 16, § 66(f) to provide, under certain circumstances, continuing jurisdiction over "custody or visitation rights" of children removed from the State. This provision now is codified as § 9–302 of the Family Law Article.

On its face, therefore, § 3–602(a)(4), prior to the 1981 amendment, constituted the broadest possible grant of authority to courts to determine who shall be awarded visitation rights. There is no indication that this authority was intended, in any manner, to be narrower than the court's authority, as previously exercised over child custody.

Donald nevertheless argues that the court's authority over visitation must be construed narrowly, in light of the 1981 amendment that specifically provided for visitation by grandparents in instances where the marriage is terminated. He contends that "[i]f the Legislature established a new category of individuals for visitation, such as grandparents, one must logically conclude the group had been legally deprived of the right and needed legislative action for relief." We disagree.

*Skeens v. Paterno*, 60 Md.App. 48, 480 A.2d 820 (1984) involved a decree that provided for paternal grandparents to exercise their son's visitation rights during his absence on Navy duty. Faced with the appropriate construction of § 3–602, the Court of Special Appeals stated that "[i]n 1981, it seemed clear enough that as a matter of law grandparents could be granted custody of and visitation rights to their grandchildren," citing as authority *Maddox v. Maddox*, 174 Md. 470, 199 A. 507 (1938) and *Powers v. Hadden*, 30 Md.App. 577, 353 A.2d 641 (1976). 60 Md.App. at 60, 480 A.2d 820. The Court of Special Appeals, therefore, looked for the legislative intent in the enactment of the 1981 amendment, by undertaking to "identify the problem the legislature was seeking to resolve in enacting [the] particular law." *Id.*

The 1981 amendment—Senate Bill 333—was the culmination of a four-year effort to enact legislation to guarantee visitation rights to grandparents.[4] Opposition to the measures seemingly succeeded because of a consensus in the

---

**4.** During the 1978 session of the General Assembly, two measures, Senate Bill 53 and House Bill 323, were introduced to "clarif[y] that a court may grant visitation rights to grandparents of a child of divorced parents," by amending § 3–602(a)(4) to read "[d]etermine who

legislative committees that the then existing law already afforded visitation rights to grandparents. In a letter to counsel for the Senate Judicial Proceedings Committee about Senate Bill 53 (1978), the Managing Attorney and the Chief Attorney of the Domestic Law Unit of the Legal Aid Bureau posited that "[t]he Court, under the present law, has the authority, and in fact does, grant visitation to any person that can further the best interests of the child." In a letter to a proponent of Senate Bill 415 (1979), the Chairman of the Senate Judicial Proceedings Committee explained the unfavorable report of the bill as follows: "The Equity Court at the present time has the authority to designate grandparents' visitation rights if in the judgment of the Court this is in the best interest of the child. It was for that reason the Committee felt best not to mandate that which is now permitted."

The testimony of the sponsor of House Bill 1205 (1979), before the House Judiciary Committee, explained the continued efforts to enact a grandparents' visitation rights bill:

---

shall have visitation rights to a child, WHICH SHALL INCLUDE A CHILD'S GRANDPARENTS IF THE PARENTS ARE DIVORCED." The language that the two measures would have added is identical, except for punctuation, and is shown in capital letters. Both measures received unfavorable reports.

During the 1979 Session, Senate Bill 415 sought to add, after the word "child" in § 3–602(a)(4), "INCLUDING ANY OF THE GRANDPARENTS OF THE CHILD IF THEY SO REQUEST." The sponsor's original intent appears to have been to reintroduce Senate Bill 53 (1978). However, in the course of review, the Department of Legislative Reference staff noted that divorce was not the only instance in which a court determines visitation, and the sponsor accepted alternative language recommended by the staff. The bill was not enacted. House Bill 1205 (1979) used different language, proposing the addition of a separate item, to read "(5) GRANT GRANDPARENTS REASONABLE VISITATION RIGHTS TO THE GRANDCHILDREN, IF IT IS IN THE BEST INTEREST OF THE CHILD." Again both measures received unfavorable reports.

After a hiatus during the 1980 Session, efforts were renewed with two measures introduced during the 1981 Session. House Bill 31 (1981) was identical to House Bill 1205 (1979) and met the same fate. As introduced, Senate Bill 333 (1981) was identical to Senate Bill 415 (1979).

"In HB 1205 grandparents are not automatically deemed a group to be considered in the awarding of visitation rights. They are, however, a category that *may* be considered for visitation rights. And once they are considered, they may only be awarded the rights if it is in the best interest of the child.

"Many of you may question whether this language is necessary. Section 3–602(a)(4) of the Courts and Judicial Proceedings Article may be construed now to permit *anyone* visitation rights. . . .

"However, the addition of the new language acts as a policy statement. It says that the legislature believes the courts should be considering rights for the grandparents if it is in the best interest of the child." (Emphasis in original.)

Donald claims that amendments to Senate Bill 333 drawn for Senator Denis were submitted

"to broaden the legislation from 'grandparents of a child' to 'certain persons' or to add 'adult siblings, uncles and aunts.' The bill was passed limiting the rights to grandparents. It is clear from the Committee Records filed with the Bill, the Legislature never intended to extend rights beyond the natural or adoptive parents of a child and the grandparents after a divorce."

The Senate Journal of Proceedings (1981) indicates that the amendments on which Donald relies were never submitted. The Senate Judicial Proceedings Committee reported Senate Bill 333 favorably, with one technical amendment adding sponsors. On motion of Senator Denis, the bill was laid over, evidently so that amendments could be drawn,[5] and, in fact, the amendments to which Donald refers were drawn on February 17, 1981. However, when on February 18, the Senate next considered Senate Bill 333, Senator Denis offered an entirely different amendment which was

---

5. Sen. Journal (1981) at 909.

adopted.[6] No other amendments were offered. Thus, as passed by the Senate, Senate Bill 333 amended § 3–602(a)(4) to read as follows:

"(4) Determine who shall have visitation rights to a child, INCLUDING ANY OF THE GRANDPARENTS OF THE CHILD IF THEY SO REQUEST *AND IF THE DENIAL OF THEIR VISITATION RIGHTS IS AN IS-SUE IN DISPUTE.*"

The italicized language was Senator Denis' amendment.

Notes in the files of the House Judiciary Committee indicated that Delegate Masters was concerned about the effect of the Senate amendment, since it could be read as precluding consideration of grandparental visitation if visitation had not been in dispute originally.

The House of Delegates adopted the House Committee amendments, which deleted the new language proposed in the Senate version and inserted the language that ultimately was enacted by Senate Bill 333.

The resultant language is susceptible to several readings. However, we agree with the Court of Special Appeals in *Skeens*, that, "[t]he legislative history contains no indication that the bill was intended as a limitation on grandparental visitation—or on any one else's visitation—in other contexts. . . . Nor is any argument made as to why the legislature might wish to impose such a limitation." 60 Md.App. at 60–61, 480 A.2d 820.

After concluding that the 1981 amendment to § 3–602(a)(4) was a mere restatement of the existing law, the court continued:

"This construction also harmonizes the provisions of paragraph (4) with the broad authority granted to the courts in the introductory sentence of subsection (a). . . . Additionally, it avoids an anomalous result and one with possible equal protection implications. Under the Skeens's reading of paragraph (4), only parents, and in

---

**6.** Sen. Journal (1981) at 940.

the event of the termination of a marriage, grandparents, would be able to seek visitation rights.... We do not believe the legislature intended any such sweeping limitations." *Id.* at 61, 480 A.2d 820.

We think it clear that the 1981 amendment to § 3–602(a)(4) was not intended to affect the law in any context but that of grandparental visitation after the termination of a marriage. As we have noted, the law before 1981 clearly was not limited to parents. Thus, the conclusion of the Court of Special Appeals in the present case that child visitation rights do not extend beyond biological or adoptive parents and grandparents was erroneous.

### IV

We next consider Donald's further argument that, even in states that have allowed stepparent visitation, an *in loco parentis* status must be proved first. Unquestionably, decisions allowing visitation by stepparents have evoked concern about visitation rights of other persons. This concern was stated, most graphically, in a dissenting opinion in *Simpson v. Simpson*, 586 S.W.2d 33, 36 (Ky.1979), stating "[t]he majority opinion ... opens the door to the butcher, the baker and the candlestick maker to a right to a hearing on 'visitation' rights." Citing this dissenting opinion, the court in *Bryan v. Bryan*, 132 Ariz. 353, 645 P.2d 1267, 1273 (1982) specifically required an *in loco parentis* status. *Accord, Collins v. Gilbreath*, 403 N.E.2d 921 (Ind.App. 1980). Similarly, courts have relied on this status to allow stepparents visitation under statutes that otherwise would have precluded visitation. *See, e.g., Carter v. Brodrick*, 644 P.2d 850 (Alaska 1982) (statute referring to "child of the marriage") and *Gribble v. Gribble*, 583 P.2d 64 (Utah 1978) (statute referring to "other relatives" of a child).

While an *in loco parentis* status may affect the court's determination as to the best interests of the child, that relationship need not exist under Maryland law before visitation rights may be granted. Chapter 317 of the Acts

of 1975, which enacted the original provisions on visitation, contained no such limitation, nor do the other statutes pursuant to which visitation has been granted and the cases construing those statutes.

## V

The Court of Special Appeals did not, in view of its decision, consider Donald's second issue on appeal, i.e., whether the trial judge erred in determining from the evidence that the grant of visitation rights to Cheryl was in Jason's best interests. We shall therefore remand the case for consideration of that issue.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO ABIDE THE RESULT.