622 A.2d 121

**Richard M. FAIRBANKS et ux.**

**v.**

**James F. McCARTER, Jr.**

**No. 125, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 31, 1993.

42

Brett W. Wilson, (Wilson & Collison, P.A., both on brief) both of Cambridge, for appellant.

George J. Goldsborough, Jr. (Goldsborough & Tolley, both on brief) both of Easton, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case focuses upon Maryland's grandparents' visitation statute, ch. 296 of the Acts of 1981, now codified as Maryland Code (1984, 1991 Repl.Vol.) § 9–102 of the Family Law Article. It provides:

"At any time after the termination of a marriage by divorce, annulment, or death, an equity court may:

(1) consider a petition for reasonable visitation by a grandparent of a natural or adopted child of the parties whose marriage has been terminated; and

(2) if the court finds it to be in the best interests of the child, grant visitation rights to the grandparent."

The primary question before us is whether exceptional circumstances justifying grandparental visitation, apart from the best interests of the grandchild, must exist as a precondition to a visitation award.

## I

Rose Mary Holden, née Fairbanks, and James McCarter were divorced in 1988. Pursuant to the divorce decree and a consent order dated January 30, 1991, the couple shared joint legal custody of their two children, Daniel and Erin. The father served as the custodial parent. The mother retained the right to visit with the children on alternate weekends, for a two-week summer vacation, and on certain holidays.

The parties' agreement made no provision for grandparental visitation. The paternal grandparents saw the children as often as five times weekly when visiting at their son's home, and sometimes invited the children to the grandparents' beach house. The maternal grandparents, Rebecca and Richard Fairbanks, typically saw the children every other Sunday afternoon when their family and friends gathered for dinner. They also saw the children somewhat sporadically at local Little League baseball games. All of the grandparents offered the children a stable, comfortable, and affectionate environment.

Mr. and Mrs. Fairbanks filed a "Complaint for Visitation Rights" in the Circuit Court for Dorchester County, naming James McCarter as the sole defendant. They alleged that the father would not voluntarily expand the time that the children might spend with their maternal grandparents, and petitioned the court to award them enforceable visitation rights of their own. The father answered by contending that the Fairbankses enjoyed ample access to the children when they were with the mother. At the subsequent hearing, Rose Mary Holden testified that she did not wish to yield any of her own visitation time with her children.

The trial court (Warren, J.) denied the petition. In so doing, it distilled three principles from the statute and case law:

"[T]he first, and probably the most important to make note of, is that the ultimate test in any of these cases is what is in the best interest of the children.

"The second of these principles ... is that [when] you are talking about custody of children, custody awarded to grandparents as against a parent is only to be granted when there are exceptional circumstances.

"In *Paterno*[1] the Court further notes that that may also be true with respect to grandparental visitation....

\* \* \* \* \* \*

"... [T]here is at least a [third] principle that absent other exceptional factors, the visitation or custody with the grandparents is in substitution of or in lieu of custody or visitation with the parent...."

The trial court found no evidence supporting "the exceptional measure" of formal grandparental visitation. It said that additional visitation orders, signifying a widening battle over Daniel and Erin's time, would be contrary to the children's best interests.

The grandparents appealed to the Court of Special Appeals, arguing that the circuit court erred by improperly raising and intertwining the questions of exceptional circumstances and derivative rights with the simple statutory command that the child's best interest only must govern visitation awards. We granted certiorari on our own motion prior to intermediate appellate review.

## II

When, as here, we issue a writ of certiorari to review a case pending before the Court of Special Appeals, we will consider those issues that would have been cognizable before the intermediate appellate court. Maryland Rule 8-

---

1. *Skeens v. Paterno*, 60 Md.App. 48, 480 A.2d 820 (1984).

131(b)(2). Furthermore, while we will ordinarily not decide any other issue not raised or decided below, the appellate court may, in its discretion, decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal. Maryland Rule 8–131(a); *Atlantic Mutual v. Kenney,* 323 Md. 116, 122, 591 A.2d 507 (1991); *Crown Oil v. Glen,* 320 Md. 546, 561, 578 A.2d 1184 (1990).

At the hearing before the circuit court, the question of whether the children's mother was a necessary party arose only obliquely, and did not lead to a ruling by the trial court. Counsel for James McCarter merely observed, without more, that "that petition [for grandparental visitation] ... should properly be directed to both parents." We agree. A person otherwise subject to service of process shall be joined in an action if, in the person's absence, complete relief cannot be accorded among those already parties, or disposition of the action may impair or impede the person's claimed interest relating to the subject of the action. Maryland Rule 2–211(a). The trial court shall order that the person be made a party if not joined as required. *Id. See generally South Down Liquors v. Hayes,* 323 Md. 4, 10–11, 590 A.2d 161 (1991); *Mahan v. Mahan,* 320 Md. 262, 271–273, 577 A.2d 70 (1990). The requirement that necessary parties be joined exists to assure that a person's rights are not adjudicated unless that person has his or her day in court, and to assure a determination of an entire controversy in a single proceeding without a multiplicity of litigation. *Bender v. Sec., Dep't of Personnel,* 290 Md. 345, 351, 430 A.2d 66 (1981).

The mother, Rose Mary Holden, was conspicuous by her absence among the litigants. Under the circumstances of this case, she clearly qualified as a necessary party whose joinder as a co-defendant was required under Rule 2–211. The respective claims of the grandparents and father relating to visitation were circumscribed, to some extent, by her own visitation rights as defined in the divorce decree and consent order. Moreover, Ms. Holden explicitly testified as

a witness that she did not wish to lose any of her own visitation time with Daniel and Erin. Inasmuch as they were potentially subject to modification at the hearing demanded by the grandparents, the mother's visitation rights were at stake. These features of the dispute required joinder of the mother as a party both to ensure complete relief with a view to the interests of the other parties, and to protect her own interests.

### III

■ As earlier noted, § 9–102 provides in pertinent part that "an equity court may ... consider a petition for reasonable visitation by a grandparent ...; and ... if the court finds it to be in the best interests of the child, grant visitation rights to the grandparent." It is well settled that in construing a statute to ascertain and effectuate its goal, our first recourse is to the words of the statute, giving them their ordinary and natural import. *NCR Corp. v. Comptroller,* 313 Md. 118, 124, 544 A.2d 764 (1988); *Comptroller v. Fairchild Industries,* 303 Md. 280, 284, 493 A.2d 341 (1985). The Court may also appropriately look at the larger context, including the legislative purpose, within which statutory language appears. *Baltimore Cty. C.A.U.T. v. Baltimore Cty.,* 321 Md. 184, 204, 582 A.2d 510 (1990); *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346 (1990).

■ Both the language and the purpose of the statute are clear. The legislature invested trial court judges sitting in equity with the power to consider and award reasonable grandparental visitation in furtherance of the child's best interest. The statute's use of the word "may," rather than "shall," signifies that the steps prescribed in § 9–102 are available, but not mandatory; such is the ordinary and natural import of the word. *See Fleishman v. Kremer,* 179 Md. 536, 541, 20 A.2d 169 (1941) ("may" bears its ordinary signification of permission, unless context shows it was meant to be imperative). The discretionary import of the

statute is thus consonant with the common-law rule that grandparents have no inherent right to custody of their grandchildren. *Burns v. Bines*, 189 Md. 157, 164, 55 A.2d 487 (1947).

We observe in this regard that the 1981 grandparents' visitation statute represented the culmination of a four-year effort to enact legislation to afford visitation rights to grandparents. *See Evans v. Evans*, 302 Md. 334, 339-42, 488 A.2d 157 (1985). It tracked the language of House Bill 1205, introduced in the 1979 Session of the General Assembly (but not enacted), as to which its sponsor, then Delegate Pica, explained its content to the House Judiciary Committee:

"In HB 1205 grandparents *are not* automatically deemed a group to be considered in the awarding of visitation rights. They are, however, a category that *may* be considered for visitation rights. And once they are considered, they may be awarded the rights if it is in the best interest of the child.

*   *   *   *   *   *

"The language puts no mandatory restrictions on a judge when he determines visitation rights. It only offers a category he may consider if the child would benefit from the visits."

(Emphasis in original.) As the 1979 House Bill and § 9-102, as enacted in 1981, were substantively identical, Delegate Pica's statement of the legislation's intent applies to the current statute, and is consistent with its plain language.

■ At the same time, we will not inferentially manufacture additional components of the statute that do not exist. *See Harris v. City of Baltimore*, 306 Md. 669, 673, 511 A.2d 52 (1986) (a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit its scope of operation); *In re Arnold M.*, 298 Md. 515, 521, 471 A.2d 313 (1984) (same). Nothing in the words of § 9-102 suggests that only exceptional circumstances, present as conditions precedent, may justify an award of

visitation to grandparents. Appellate courts in several jurisdictions have imposed such a requirement. *See, e.g., Brown v. Earnhardt,* 302 S.C. 374, 396 S.E.2d 358 (1990); *Chodzko v. Chodzko,* 66 Ill.2d 28, 360 N.E.2d 60 (1976) (rule later modified by statute). We, however, are bound by the plain words of Maryland's statute, which give not the remotest indication that a trial court must first search for some special circumstance or exigency beyond the child's best interests, such as a parent's illness or unfitness, which might call for an award of visitation privileges to a grandparent. The relevant legislative files, which we have thoroughly reviewed, are barren of any such thought. Even the appellee concedes that the statute itself does not require a threshold finding of exceptional circumstances justifying an award of visitation to grandparents.

The Court of Special Appeals has tentatively proposed in a dictum that grandparental visitation should be based on exceptional circumstances, as is the case with grandparental custody. *Skeens v. Paterno, supra,* 60 Md. App. at 61, 480 A.2d 820. That suggestion was made within a larger discussion in which the court correctly observed that the ultimate test for custody and visitation is the best interest of the child. *Id.* To the extent that *Skeens v. Paterno* indicates a requirement of special circumstances for grandparental visitation, it is disapproved. Custody disputes and visitation disputes should be measured by their respective standards. Visitation is a considerably less weighty matter than outright custody of a child, and does not demand the enhanced protections, embodied in the exceptional circumstances test, that attend custody awards.

Nor is there anything in § 9–102 to indicate in any way that a grandparent's right to petition for visitation with a child stems from a corresponding right enjoyed by the parent. In other words, the visitation rights of a grandparent are not derivative. *Weichman v. Weichman,* 50 Wis.2d 731, 184 N.W.2d 882, 885 (1971); *accord Bennett v. Bennett,* 150 N.J.Super. 509, 376 A.2d 191, 193 (1977). Rather

than functioning within a sub-set of parental visitation law, the grandparent's right to seek visitation under § 9–102 exists independently.

We thus hold, in sum, that under § 9–102 grandparents enjoy an independent right to petition for visitation with their grandchildren. Grandparents are not obliged to support their claim by alleging and proving the existence of exceptional circumstances justifying such visitation. The outcome of the grandparents' petition lies within the sound discretion of the trial court, guided solely by the best interests of the grandchild. In the instant case, the trial court appears to have permitted other considerations to intrude into and color its decision. The grandchild's best interest is paramount. *Hixon v. Buchberger,* 306 Md. 72, 83, 507 A.2d 607 (1986). Indeed, it is the exclusive determinant.

### IV

■ The definition of a child's best interest is an elusive one. The question has inspired discussion among the commentators. *See, e.g.,* Patricia S. Fernandez, *Grandparent Access: A Model Statute,* 6 Yale Law & Policy Rev. 109, 122–129 (1988); Phyllis C. Borzi, Note, *Statutory Visitation Rights of Grandparents: One Step Closer to the Best Interests of the Child,* 26 Cath.U.L.Rev. 387 (1977). Common experience dictates that visits with grandparents often offer benefits to children which cannot be derived from any other relationship. *Mimkon v. Ford,* 66 N.J. 426, 332 A.2d 199, 204–205 (1975). A trial court sitting in equity is best placed to judge the particular facts and personalities of each case, and enjoys broad discretion in adjudicating visitation matters. *See Ross v. Hoffman,* 280 Md. 172, 186, 372 A.2d 582 (1977) (ultimate conclusion as to child custody is within sound discretion of the chancellor).

■ As a general proposition, visitation awarded to adults is not for their gratification or enjoyment, but to fulfill the needs of the child. *Weichman, supra,* 184

N.W.2d at 884.  The trial court must concern itself solely with the welfare and prospects of the child.  In so doing, the court should assess in their totality all relevant factors and circumstances pertaining to the grandchild's best interests.  These would include, but not be limited to:  the nature and stability of the child's relationships with its parents; the nature and substantiality of the relationship between the child and the grandparent, taking into account frequency of contact, regularity of contact, and amount of time spent together;  the potential benefits and detriments to the child in granting the visitation order;  the effect, if any, grandparental visitation would have on the child's attachment to its nuclear family;  the physical and emotional health of the adults involved;  and the stability of the child's living and schooling arrangements.

Here we add several caveats.  Ordinarily, a court should approach with the utmost caution a proposed significant disruption of the child's schedule during the weekdays of the school term.  The routine of a normal home life should not be fractured and parceled out in pieces. The trial court should also be alert to the psychological toll the visitation dispute itself might exact on a child in the midst of contesting adults.  Finally, without in any way inferring its presence in this case, a petition for grandparental visitation must not foster collusion between grandparents and a non-custodial parent seeking to undo a prior decree and win greater access to the child in question.

*CASE REMANDED TO THE CIRCUIT COURT FOR DORCHESTER COUNTY WITHOUT AFFIRMANCE OR REVERSAL FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION, INCLUDING JOINING ROSE MARY HOLDEN AS A NECESSARY PARTY. COSTS TO ABIDE THE RESULT.*

McAULIFFE, Judge, concurring.

It may be that what the chancellor intended to convey when he spoke of "exceptional" circumstances was the

notion that ordinarily it will be neither necessary nor proper to award separate visitation rights to grandparents in order to accommodate the best interests of a child. If that is all he intended to say, I agree with him.

Under ordinary circumstances and in the usual case, each parent should be willing and able to include visits with grandparents when the children are with that parent. It will be the unusual case, where visitation with the non-custodial parent is restricted or non-existent, or where a parent is estranged from his or her parents, or where for some other reason, the customary interaction with grandparents is not possible, that the best interests of the child may warrant the unusual, but certainly available, order granting visitation to grandparents.

There is more than enough acrimony, heartbreak, expense, and suffering involved in child custody cases now; I am confident the legislature did not intend to exacerbate this situation by suggesting that grandparental involvement in custody and visitation disputes should become the norm. When the chancellor said there were no unusual or "exceptional" circumstances in the present case, he was correct. The mother had the children with her on alternate weekends and on specified holidays, and for a vacation during the summer. The mother and her parents live in the same area, and they are not estranged. The decision by the chancellor that this arrangement afforded adequate time for grandparental visitation, and that additional visitation would not be in the best interests of the children, was well within the range of the chancellor's discretion, and should have been affirmed but for the absence of a necessary party.