677 A.2d 560

**Arnold H. MANER et ux.**

v.

**James STEPHENSON et ux.**

**No. 113, Sept. Term, 1995.**

Court of Appeals of Maryland.

June 6, 1996.

462

Sally D. Adkins (Karen S. Payne, Adkins & Allen, L.L.P., on brief), Salisbury, for petitioner.

John B. Robins, IV (Robins, Johnson & Wade, on brief), Salisbury, for respondent.

Jane C. Murphy, Kristin H. Woolam, Family Law Clinic, University of Baltimore School of Law, Baltimore, for University of Baltimore School of Law.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

In this case, Arnold and Barbara Maner filed a petition under Maryland Code (1991 Repl.Vol., 1995 Supp.) § 9–102 of the Family Law Article for visitation with their grandchildren, who live in Salisbury, Maryland with their mother and father,

Kita and Jim Stephenson, in an "intact nuclear family."[1] The issue we must resolve is whether the trial court erred in denying that petition.

## I

The grandchildren, Katie and Trey Stephenson, are ages nine and six respectively. The Maners also live in Salisbury and are Katie and Trey's maternal grandparents.

The Maners filed their petition in the Circuit Court for Wicomico County on July 14, 1994. The Stephensons agreed, in their original answer to the petition, that "it is important for the children to maintain a relationship with the grandparents, regardless of the relationship between the parties to this proceeding" and were "willing to establish a regular and reasonable visitation schedule." The Stephensons allowed the Maners to see their grandchildren once in August, twice in September, once in October, and on Christmas Eve of 1994. In an amended answer, filed eight months after the original answer, however, the Stephensons requested denial of the petition.

On April 24, 1995, Judge Alfred T. Truitt, Jr. held an evidentiary hearing at which the Maners and Stephensons testified, in addition to Kita's sister-in-law, grandmother, and several friends and neighbors. After hearing oral arguments, Judge Truitt, in a written opinion, dated June 13, 1995, denied the Maners' petition for visitation. He first noted that Katie and Trey "have a loving and healthy relationship" with their parents; that this was undisputed; and that their parents "are active in the lives of the children and a very stable 'nuclear family' exists between the [parents] and their children." Judge Truitt then discussed the history of tension in this family and the events that led to the Maners' petition.

---

1. In *Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 500, 97 S.Ct. 1932, 1936, 52 L.Ed.2d 531 (1977), the Court defined "nuclear family" as "essentially a couple and their dependent children."

The evidence presented by both sides at trial establishes that the relationship between Kita Stephenson and Barbara Maner is strained. This strained relationship started when Kita was a child and continues today. The defendant's testimony revealed that she felt as if she was always dominated by her mother, Barbara, and that her brother Mark was favored over her. This favoritism extended to Mark's wife, Anne, and thus led to a strained relationship between Anne and Kita. Other evidence presented by the defendants was that Barbara Maner has been critical of both Kita and Jim Stephenson (sometimes in front of the children). Kita defined her mother as a "relationship destroyer" and was not willing to let the relationship she and her husband had with their children be harmed. The Stephensons also spoke of the stress placed upon the family prior to, during and after visits with the Maners. They testified that this stress made the children uncomfortable. The Maners themselves state that after long periods without visitation, it took a while for the children to feel comfortable around them.

The Maners testified that Kita was difficult to deal with as a child and as an adult. Barbara Maner says that she loves her daughter except when she exhibits her jealousy.

The cessation of visitation followed an incident which occurred in October of 1993. The Stephensons had planned a camping trip with the children but agreed to cancel the trip because Kita's grandmother, Beulah, was going to be in town and there would be a family gathering. The cancellation of the trip was at the request of Barbara Maner. Just prior to the family gathering, Barbara Maner called and said that the Stephensons shouldn't come over. The reason for this was that Anne Maner did not want Kita to be present. She was upset that the Stephensons hadn't attended the birthday party of her daughter Nancy earlier in the year. This angered the Stephensons and regular visitation of the Maners with Katie and Trey ceased.

Judge Truitt noted that the case appeared to be one of first impression, because former grandparent visitation cases did not involve intact nuclear families. The intent of the grand-

parent visitation statute, the court said, was, nonetheless, to permit grandparents to petition for visitation of grandchildren in both dissolved and intact nuclear families. The issue, Judge Truitt observed, was "[w]hether it is in the best interest of the two grandchildren ... to award visitation rights to their maternal grandparents ... even though such visitation is opposed by the children's parents...."

In reviewing the law, Judge Truitt said that, to be awarded visitation rights, the grandparents did not have to prove that "exceptional circumstances [existed] ... rather, the outcome of the grandparents' petition lies within the sound discretion of the trial court, guided solely by the best interests of the grandchild." Quoting from *Fairbanks v. McCarter*, 330 Md. 39, 50, 622 A.2d 121 (1993), the court noted that "the trial court should also be alert to the psychological toll [the] visitation dispute itself might exact on a child in the midst of contesting adults." Addressing the factors enunciated in *Fairbanks, id.,*[2] the court found:

a) the nature and stability of the children's relationship with their parents is substantial and stable;

b) even prior to October 1993, the maternal grandparent's association with the children was at best sporadic and had no regularity;

c) the potential benefits and detriments of granting visitation is at best speculative and is therefore a neutral factor;

---

**2.** In *Fairbanks*, we said that a trial court, in determining the best interests of the child, "should assess in their totality all relevant factors and circumstances pertaining to the grandchild's best interests," including, but not limited to:

the nature and stability of the child's relationships with its parents; the nature and substantiality of the relationship between the child and the grandparent, taking into account frequency of contact, regularity of contact, and amount of time spent together; the potential benefits and detriments to the child in granting the visitation order; the effect, if any, grandparental visitation would have on the child's attachment to its nuclear family; the physical and emotional health of the adults involved; and the stability of the child's living and schooling arrangements.

330 Md. at 50, 622 A.2d 121.

d) it appears obvious from the testimony that visitation would have a deleterious effect on the nuclear family;

e) having heard the testimony and judged the credibility of the witnesses, we are constrained to say that the grandmother appears to be domineering and immature and the grandfather is at best docile and subdued, which indicates some emotional instability on their part;

f) the stability of the children's living and schooling arrangements is a neutral factor since all parties live in the same community.

In addition to these findings, Judge Truitt observed that "the grandchildren have ongoing visitation with their *paternal* grandparents, an indication that their denial of visitation with the Maners is not arbitrary." (emphasis added). Judge Truitt accordingly found that visitation was not in the best interest of the children.

The Maners appealed to the Court of Special Appeals, but before that court heard the matter, we issued a Writ of Certiorari.

## II

The Maners argue that, although the court's opinion referred to the best interests standard, it improperly deferred to the Stephensons' wishes because they are an intact nuclear family, thereby imposing a higher burden of proof on the Maners. In addition, the Maners contend that the evidence does not support the trial court's factual findings and that it should have applied a rebuttable presumption that visitation with grandparents is in the best interests of grandchildren.

The Stephensons argue that Judge Truitt applied the best interests standard and did not require the Maners to meet a higher burden of proof. In this regard, to apply a rebuttable presumption in favor of the grandparents, as urged by the Maners, is not in accord with our cases or the plain language of the statute.

### III

Maryland Code (1991 Repl.Vol., 1995 Supp.) § 9–102 of the Family Law Article, entitled "Petition by grandparents for visitation," provides:

An equity court may:

(1) consider a petition for reasonable visitation of a grandchild by a grandparent; and

(2) if the court finds it to be in the best interests of the child, grant visitation rights to the grandparent.

The statute in its original form was preceded by the phrase, "At any time after the termination of a marriage by divorce, annulment, or death." *See* Ch. 276 of the Acts of 1981. At the time grandparent visitation rights were codified, Maryland courts already had the authority, under the common law, to award grandparents custody or visitation. *See, e.g., Maddox v. Maddox,* 174 Md. 470, 199 A. 507 (1938) (custody granted to paternal grandmother over mother); *Piotrowski v. State,* 179 Md. 377, 18 A.2d 199 (1941) (custody granted to maternal grandparents over father). Thus, in *Evans v. Evans,* 302 Md. 334, 342, 488 A.2d 157 (1985), we agreed with the Court of Special Appeals in *Skeens v. Paterno,* 60 Md.App. 48, 60, 480 A.2d 820, that the 1981 codification was "a mere restatement of the existing law." Indeed, the law was adopted for the purpose of "clarifying that a court may grant visitation rights to grandparents of a child." Ch. 276 of the Acts of 1981.

By Ch. 252 of the Acts of 1993, the legislature amended § 9–102 by deleting the phrase "At any time after the termination of a marriage by divorce, annulment, or death." The House Floor Report pertaining to this amendment noted that courts had granted visitation rights to grandparents after termination of the parents' marriage and where no marriage was involved, but had "not recognized visitation rights of grandparents when the marriage of the parents is still intact." The bill, therefore, made "the marital status of parents irrelevant in determining visitation rights of grandparents." Floor Report, H.B. 30 (1993). The plain language of the statute, therefore, clearly reflects the legislature's intent to allow

courts to grant grandparents visitation, even where the parents' marriage is intact, if it is in the best interests of the children.

## IV

Since the 1993 amendment, we have addressed this statute twice. In *Fairbanks, supra*, 330 Md. at 49, 622 A.2d 121, we held that a petition for grandparent visitation under § 9–102 need not be supported by exceptional circumstances. The parents were divorced and shared joint legal custody of their two children; the father was the custodial parent and the mother enjoyed visitation rights. The maternal grandparents filed a petition for visitation, naming only the father as a defendant. The father agreed to allow the children to see the grandparents while they were with their mother, but the mother did not want to relinquish any of her time with the children to her parents. *Id.* at 43, 622 A.2d 121. The trial court denied the petition because it found no exceptional circumstances to support the grandparents' petition. *Id.* at 44, 622 A.2d 121.

We first held that the mother was a necessary party to the suit. *Id.* at 45, 622 A.2d 121. We then examined the language of the statute and the legislative history and determined that grandparent visitation is "available, but not mandatory," *id.* at 46, 622 A.2d 121, that grandparents need not show exceptional circumstances as a precondition to their petition, *id.* at 47–48, 622 A.2d 121, and that grandparents' rights are "not derivative" of the parent's rights. *Id.* at 48, 622 A.2d 121. We concluded that "[t]he outcome of the grandparents' petition lies within the sound discretion of the trial court, guided solely by the best interests of the grandchild." *Id.* at 49, 622 A.2d 121.

In *Beckman v. Boggs*, 337 Md. 688, 655 A.2d 901 (1995), we held that adoption of a child by her maternal grandparents does not preclude her paternal grandparents from petitioning for visitation. Following the mother's death, the maternal grandparents, the Beckmans, adopted their granddaughter

and the father retained visitation rights. *Id.* at 694, 655 A.2d 901. The paternal grandparents, the Boggses, then sought visitation. The trial court granted their petition, holding that the Beckman's adoption did not affect the Boggses' rights and that visitation with the Boggses would be in the child's best interests. *Id.* at 695, 655 A.2d 901.

We agreed that the severing of the father's rights did "not result in a corresponding loss of the Boggses' independent grandparental rights under § 9–102 to petition for visitation." *Id.* at 701, 655 A.2d 901. While recognizing the special role grandparents may play in a child's life, *id.* at 702, 655 A.2d 901, we reiterated that "all relevant factors and circumstances should be considered in assessing what will best serve the child's interest." *Id.* at 693, 655 A.2d 901. The *Fairbanks* factors, we emphasized, are guidelines; "they were meant to be illustrative of what should be considered and were not intended as absolutes." *Id.* at 703, 655 A.2d 901. Although the trial court had not explicitly addressed each of the *Fairbanks* factors, we upheld its determination because it had considered all the evidence in assessing the best interests of the child.

V

"As we have said, determinations concerning visitation are within the sound discretion of the trial court as it is in the best position to assess the import of the particular facts of the case and to observe the demeanor and credibility of the witnesses." *Beckman, supra,* 337 Md. at 703, 655 A.2d 901. We must, therefore, determine whether the trial court abused its discretion in denying the Maners' petition. *Id.; Petrini v. Petrini,* 336 Md. 453, 470, 648 A.2d 1016 (1994).

By its plain language, § 9–102 does not distinguish cases in which the parents' marriage is intact from those in which the marriage is ended or never existed. In every grandparent visitation case, therefore, the trial court must examine the totality of the circumstances and determine whether granting the petition would be in the child's best

interests. In this case, the trial court properly considered all the relevant facts and circumstances, applied the best interests standard, and did not abuse its discretion in denying the Maner's petition. That Judge Truitt may have believed that this case was one of first impression due to the presence of an intact nuclear family does not imply that he deferred to the parents' wishes or imposed a higher burden of proof on the Maners.

Judge Truitt acted well within his discretion in considering the effect of visitation on the childrens' relationship with their parents. It was also permissible for him to consider the relationship between the Maners and the Stephensons, or more specifically between Kita and her mother. *Daugherty v. Ritter,* 646 N.E.2d 66, 68 (Ind.App. 2 Dist.1995), *aff'd,* 652 N.E.2d 502 (Ind.1995) ("While the [grandparent-grandchild] relationship may, in any given case, be sufficient to make grandparent visitation in the child's best interest, notwithstanding the dissension between the parent and grandparent, it may not be sufficient to overcome the effects of the discord on the child in another."). In addition, we have recognized that judicial supervision of familial relationships is disruptive to the lives of children, *In re Adoption No. 10941,* 335 Md. 99, 120, 642 A.2d 201 (1994); *see also Brooks v. Parkerson,* 265 Ga. 189, 454 S.E.2d 769, 773 (1995) ("[T]he impact of a lawsuit to enforce maintenance of the [grandparent-grandchild] bond over the parents' objection can only have a deleterious effect on the child."). We have also instructed trial courts to consider the "psychological toll" of visitation disputes on children. *Fairbanks, supra,* 330 Md. at 50, 622 A.2d 121.

■ Finally, it bears repeating that courts may not apply a rebuttable presumption in favor of grandparent visitation. Nothing in the language of the statute or the legislative history supports such a presumption. *Cf. Campbell v. Campbell,* 896 P.2d 635, 643 (Utah App.1995) (holding that visitation statute similar to § 9–102 is constitutional and does not presume grandparent visitation to be in child's best interest). While we have generally recognized the great benefits to

children of maintaining relationships with grandparents, *Beckman, supra,* 337 Md. at 702, 655 A.2d 901, we have held that § 9–102 leaves decisions regarding grandparent visitation to the sound discretion of the trial court. *Fairbanks, supra,* 330 Md. at 46, 622 A.2d 121. A presumption that grandparent visitation is in the best interests of the child would undermine the trial court's discretion and conflict with the unambiguous language of the statute. *See also Brooks, supra,* 265 Ga. 189, 454 S.E.2d 769.

*JUDGMENT AFFIRMED; WITH COSTS.*