679 A.2d 530

**In re ADOPTION/GUARDIANSHIP NO. 10935 IN the CIRCUIT COURT for MONTGOMERY COUNTY, MARYLAND.**

**No. 48, Sept. Term, 1995.**

Court of Appeals of Maryland.

July 25, 1996.

616

Alan D. Massengill (Law Offices of Alan D. Massengill, P.A., on brief), Gaithersburg, for Appellant.

Stephen L. Lefebvre (Stephen L. Lefebvre, P.C., on brief), Germantown, for Appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

This case involves a petition to resign as co-guardian of the persons of three minors. The issue before us concerns the standard which a court should apply in considering a petition to resign as guardian of the person of a minor.

## I.

Carl and Mavis Bauer were married on August 21, 1979. At the time, Mavis had three children from a previous marriage, and Carl had one. Steven Fountain is Mavis's son from her prior marriage. Steven married Annie Marie in 1979 in North Carolina, and their first child, James Ellis Fountain, was born in December 1979.

In 1981, Steven, Annie Marie, and James Ellis Fountain moved to Maryland. Steven and Annie Marie divorced in early 1982, and Annie Marie married John Keith Geiger. Later in 1982, Annie Marie and John Keith Geiger had a son who was initially named Charles Keith Geiger and subsequently named Charles Keith Fountain.[1] Sometime later, Annie Marie and John Keith Geiger apparently separated, and Annie Marie and Steven apparently resumed co-habitation. On March 12, 1984, Annie Marie and Steven had their second child together, Daniel Carl Fountain. Shortly thereafter, Annie Marie moved back to North Carolina, leaving all three boys in Steven's custody.

On November 19, 1985, Steven filed in the Circuit Court for Montgomery County a complaint for custody of his two sons, James and Daniel, as well as for custody of Charles Keith Geiger. Both Annie Marie, who lived in North Carolina, and Charles's natural father, John Keith Geiger, who still resided in Maryland, signed documents consenting to the appointment of Steven "as guardian and legal custodian" of the boys. The circuit court ordered that Steven be granted custody of all three boys.

About three years later, in early 1989, Carl and Mavis filed three virtually identical petitions in the Circuit Court for Montgomery County requesting that the circuit court name them guardians of the persons of the three children, James, Charles and Daniel. Each of the petitions stated that Carl and Mavis sought "the appointment of a guardian of the

---

1. Charles's last name was changed from Geiger to Fountain by a court order entered on July 6, 1989.

person of the minor so that the minor can be covered under Petitioners' health insurance policy, provide schooling for the child and perform all other acts necessary to the raising of the child." The petitions indicated that the three boys had resided with Mavis and Carl for most of the time since 1984. Each petition also stated that Carl and Mavis "are fully able to support the minor child. In addition, Steven Anthony Fountain has agreed to pay the Petitioners the sum of One Hundred Dollars ($100.00) per month as child support." Steven, John Keith Geiger who had moved to Pennsylvania, and Annie Marie who continued to reside in North Carolina and had apparently remarried, all signed documents consenting to the appointment of Carl and Mavis as guardians for the boys. On June 16, 1989, the Circuit Court for Montgomery County appointed Carl Bauer and Mavis Bauer as guardians of the person for all three boys.

According to Mavis, Carl moved out of the family home on May 9, 1994. Mavis filed in the Circuit Court for Montgomery County, on July 19, 1994, a complaint which, as amended, sought a limited divorce from Carl on the ground of abandonment, alimony, and child support. That action is presently pending in the circuit court.

On October 5, 1994, Carl instituted the present action by filing in the Circuit Court for Montgomery County a petition to resign as co-guardian of James, Charles and Daniel. Carl submitted his petition to resign pursuant to Maryland Code (1974, 1991 Repl.Vol.), §§ 13–220 and 221 of the Estates and Trusts Article and Maryland Rule V81. In his petition, Carl advised the circuit court that his resignation as co-guardian would not terminate the guardianship; instead, it would leave Mavis as the sole guardian. Mavis filed an opposition to Carl's petition to resign, and thereafter both sides filed memoranda, affidavits, and answers to interrogatories.

In opposing Carl's petition, Mavis pointed out that the statutes invoked by Carl, §§ 13–220 and 221 of the Estates and Trusts Article, related to guardians of property, and that

§ 13–702 of the Estates and Trust Article was the statute relating to guardians of the person of minors. Mavis further asserted that it was not in the best interests of the minor children to allow Carl Bauer to resign as co-guardian. She specifically contended that "Carl asked for, and was granted, full parental authority and responsibility for all three children [and the] Court cannot allow him to simply walk away from his responsibilities and obligations," that "by agreement of the natural parents, all three children have spent the majority of their lives with, and have been raised and supported by, Mavis and Carl," that Carl "desired that he and Mavis become guardians of the children in order to provide them with the support, stability and security they needed," that Carl had agreed in the guardianship petition "to provide schooling for the children and perform all other acts necessary to the raising of the children," that Carl "promised" that he and Mavis were "fully able to support" the children, that the children considered Carl as their father, that Carl had been acting as their father, taking them to "father-son prayer breakfasts," attending parent-teacher conferences, etc., and that Carl "often reassured [the children] that he would always 'be there' for them."

Mavis argued that, in light of all of the circumstances, Carl had a duty to support the three boys based on "equitable estoppel and contract." Mavis stated that Carl had induced the children, their natural parents, and Mavis to rely upon his "representations that he would provide for their support and would 'always be there for the children.'" Mavis's position was that "Carl Bauer must not be allowed to breach his agreement to support the children" by being permitted to resign as co-guardian.

In reply, Carl disputed several of Mavis's factual assertions, and denied that he had agreed to or assumed the role of father to the three boys. Carl asserted that Steven had lived with Carl, Mavis and the children during a majority of the time, and that Steven had performed the role of parent to the

children until he became incarcerated in 1993.[2] Carl claimed that the "cumulative stress of Mavis's persistent pressure and efforts to support her adult children and grandchildren," and the "stress" brought on by "Steven's murder of his girlfriend of five years," have left Carl with "severe depression" for which he was receiving psychiatric treatment and which "has resulted in [Carl's] inability to function as a guardian." Carl also pointed out that he *no longer resided in the family home* with the children, that he has "been forced to avoid the . . . house because of Mavis's aggressive behavior and emotional abuse," and that he lived alone in an apartment. Finally, Carl denied that he had contractually undertaken to support the children or that he had a duty to support them under principles of equitable estoppel.

Neither side filed an express motion for summary judgment, although in one of her memoranda Mavis asserted that Carl's "Petition To Resign As Guardian should be treated as a Motion For Summary Judgment and should be denied." When the case was called for hearing in the circuit court, although Mavis's counsel had brought numerous witnesses for a full evidentiary trial on the disputed factual issues, her counsel nevertheless suggested to the court that "it is my position, after continuing to reflect on the matter, that it is a question of law." The court agreed, decided to resolve the matter as a summary judgment proceeding, and neither side objected.[3]

During the argument before the circuit court, counsel for Mavis agreed with the court's comment that, ordinarily, the question of whether one should remain as guardian of the

---

**2.** Steven was convicted of murdering his girlfriend in 1993 and is serving a sentence of life imprisonment.

**3.** With regard to the propriety of a trial court's rendering summary judgment when no motion for summary judgment was filed, *see Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 142–147, 642 A.2d 219, 223–225 (1994). In the instant case, however, the parties in substance sought to have the case disposed of by summary judgment. Furthermore, neither side in this Court argues that the circuit court erred by not holding an evidentiary hearing.

person of a minor, and the question of whether one has a duty to support the minor, were entirely separate and distinct issues, and that "being appointed as a guardian does not carry with it the duty of support in and of itself." Counsel for Mavis also did not disagree that, except for the alleged duty of support, the petition to resign should be granted. Nevertheless, Mavis's position was that, under the circumstances here, Carl had a duty to support the three children under principles of contract and/or equitable estoppel, and that this assumption of the duty to support the minors warranted a denial of the petition in this case.

The trial judge agreed that the issue before the court was "whether or not [Carl] has any duty of support." The judge then held, based on the facts relied upon by Mavis, that Carl had no duty to support the children under principles of contract or equitable estoppel. The court concluded that, because "there is, in the court's opinion, no legal basis to require him to support these children," the court "will grant the request of Carl Bauer to resign as co-guardian of these three children." Subsequently the court signed an order which, after referring to the documents and arguments by the parties, granted the petition to resign as co-guardian.

Mavis appealed to the Court of Special Appeals, and, prior to any further proceedings in that court, we issued a writ of certiorari.

Both sides, in their briefs and oral arguments before this Court, deal entirely with the question of whether Carl had a duty to support the three boys. Mavis argues that Carl had a duty to support the children under principles of "equitable estoppel" and, alternatively, that he "is contractually obligated to continue supporting the minor children." For this reason, according to Mavis, the circuit court's order should be reversed. Carl argues that the circuit court correctly held that he had no duty of support, and that, therefore, the order should be affirmed. Carl principally relies upon this Court's opinion in *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986). Both sides construe the circuit court's order as an adjudication

of the support issue. According to counsel, Carl has argued in the pending divorce action that the circuit court's order in this case is preclusive with regard to the child support issue raised in the divorce action.

## II.

### A.

The provisions of the Estates and Trusts Article of the Maryland Code governing guardianships separately classify guardians of property and guardians of the person. Title 13, subtitle 2, consisting of sections 13–201 through 13–222, which include the provisions initially relied on in Carl's petition to resign, relate to guardians of property. The record discloses that the three wards had no assets and that Carl was appointed only as co-guardian of their persons. Therefore, §§ 13–201 through 13–222 are not directly applicable to this case.

Title 13, subtitle 7, of the Estates and Trusts Article, consisting of §§ 13–701 through 13–710, entitled "Guardian of the Person," contains the statutory provisions relating to guardians of the person. Section 13–701 deals with the testamentary appointment of a guardian, and §§ 13–704 through 13–710 concern guardians of disabled persons; consequently, these sections do not apply here. *Wentzel v. Montgomery Gen. Hosp.*, 293 Md. 685, 700–701, 447 A.2d 1244, 1252–1253 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983).

 The pertinent statutory section is § 13–702, which provides as follows:

" § 13–702. **Court appointment of guardian of a minor.**

(a) *General rule.*—If neither parent is serving as guardian of the person and no testamentary appointment has been made, on petition by any person interested in the welfare of the minor, and after notice and hearing, the court may appoint a guardian of the person of an unmarried minor. If the minor has attained his 14th birthday, and if the person otherwise is qualified, the court shall appoint a

person designated by the minor, unless the decision is not in the best interests of the minor. This section may not be construed to require court appointment of a guardian of the person of a minor if there is no good reason, such as a dispute, for a court appointment.

(b) *Venue and procedure.* Venue in proceedings under this subtitle shall be as prescribed by the Maryland Rules. The contents of the petition and the manner of giving notice of the hearing on the petition shall be as prescribed by Maryland Rules." [4]

Section 13–702 contains no language expressly permitting a resignation by a guardian of the person. In fact, § 13–702 is very general, and specifically deals with only a few matters in connection with the appointment of a guardian of the person of a minor. In *Wentzel v. Montgomery Gen. Hosp., supra,* 293 Md. at 701–702, 447 A.2d at 1252, Chief Judge Murphy for the Court explained the legislative purpose underlying § 13–702 as follows:

"In enacting § 13–702, expressly recognizing the authority of circuit courts to appoint a guardian of the person of a minor, but without delineating the guardian's powers and duties, the legislature intended that circuit courts would exercise their inherent equitable jurisdiction over guardianship matters pertaining to minors, adopting standards with respect thereto as would be consistent with and in furtherance of the incompetent ward's best interests.

\* \* \* \* \* \*

"It is a fundamental common law concept that the jurisdiction of courts of equity over such persons is plenary so as to

---

**4.** Section 13–703 is applicable to appointments made under either § 13–701 (testamentary appointment) or § 13–702, and states as follows:

" **§ 13–703. Bond; accounting; compensation.**

The guardian of the person of a minor shall not be required to post any bond or to file any accounts. Unless otherwise provided by the will appointing a guardian of the person, he shall not be entitled to any compensation for serving as guardian of the person."

afford whatever relief may be necessary to protect the [minor's] best interests." [5]

Thus, with respect to the many issues which may come before a court in connection with a guardianship under § 13–702, the general overall standard guiding the court is the best interests of the minor. *See also, e.g., Sudler v. Sudler,* 121 Md. 46, 56, 88 A. 26, 30 (1913) ("the best interests of [the] ward" is the governing standard); *Compton v. Compton,* 2 Gill 241 (1844) ("interests ... of the infant" guide a court in appointing a guardian).

### B.

Although this Court has not previously dealt with a request to resign as a guardian of the person of a minor, the historical evolution of the issue, culminating in decisions by courts in our sister states, confirms that a petition to resign as guardian should be granted if it is in the best interests of the minor.

In England, the general rule at an earlier period of the common law was that guardians could not resign. *Spencer v. Chesterfield,* 27 Eng. Rep. 94, 94–95 (Ch. 1752); *Shaftsbury v. Shaftsbury,* 25 Eng. Rep. 121, 124 (Ch. 1725); *Macpherson On Infants* at 26–27, 98 (1843); 1 Schouler, *Domestic Relations,* § 854 (6th ed. 1921). This rule was especially strict for guardians in socage.[6] As the court explained in *Shaftsbury v. Shaftsbury, supra,* 25 Eng. Rep. at 124, "the Guardian in Socage has no Interest of Profit; it is an Interest of Honour, and for the Honour of the Family committed to his next of

---

**5.** *See Crain v. Barnes,* 1 Md. Ch. 151, 153 (1847) ("The relation of guardian and ward constituting, as Mr. Justice Story says, the most important and delicate of trusts, ... this relation and the rights and obligations which grow out of it, are peculiarly within the jurisdiction of this court"); *Corrie's Case* 2 Bland 488, 489 (1830).

**6.** A guardian in socage, at common law, "was a species of guardian who had the custody of lands coming to the infant by descent, as also of the infant's person, until the latter reached the age of fourteen. Such guardian was always 'the next of kin to whom the inheritance cannot possibly descend.'" *Blacks Law Dictionary* at 707 (6th ed. 1990).

Kin, and therefore is inherent to the Blood, and can't be assignable."

The rule that guardians could not resign was apparently less rigid when applied to testamentary guardians as long as special circumstances existed. In *Spencer v. Chesterfield, supra,* 27 Eng. Rep. at 95, the Lord Chancellor initially ruled against a petition to resign, announcing that testamentary guardians could not resign and that the court would compel the guardians to act. Upon reconsideration of a revised petition, this time submitted by the ward himself and with his mother's consent, the Lord Chancellor ruled that the guardians could resign because of the special circumstances of this case. In so ruling, the Lord Chancellor commented that "in general he would not comply with such [a] petition [to resign], nor should this case be drawn into precedent."

Schouler, in his treatise on Domestic Relations, explained why courts would not permit a guardian to resign at an earlier period of the common law (1 Schouler, *Domestic Relations, supra,* § 854 at 957–958):

"The office of a guardian was regarded as something so honorable at the common law that it could not be easily refused, much less resigned. Natural guardians, of necessity, could not resign. We have seen, in another connection, how far the natural guardian may practically surrender his children's custody, by allowing others to adopt them, by placing them in a charitable institution, and the like; which is the only sense in which this guardianship may be considered as voluntarily transferred. So guardians in socage, being designated by the law, could not in strictness resign; if they could shift their authority at all, it must have been by assignment. There is reason to believe that, before the statute of Marlbridge, they could assign, but only to the extent of placing the ward's body in custody of another. In later times, no assignment whatever has been permitted. For as Lord Commissioner Gilbert observed, guardianship in socage is an interest, not of profit, but of honor, committed to the next of kin, inherent in the blood; and therefore not assignable."

"The resignation of a testamentary guardian is not, as a rule, permitted.... Though this was [only the rule for] testamentary guardianship, we presume the rule to be equally strict, or nearly so, in case of chancery guardian."

In this country, the general rule developed that, in the absence of a statute authorizing the resignation of guardians, there is no absolute right to resign. *See, e.g., Wackerle v. People,* 168 Ill. 250, 254, 48 N.E. 123, 124 (1897); *Young v. Lorain,* 11 Ill. 624, 633 (1850); *Evans v. Johnson,* 39 W.Va. 299, 306, 19 S.E. 623, 625 (1894). The majority of cases, however, take the position that a guardian's petition to resign should be granted if the resignation is for good cause or is in the best interests of the ward. *See, e.g., Wackerle v. People, supra,* 168 Ill. at 254, 48 N.E. at 124; *Ex parte Crumb,* 2 Johns Ch. 439 (N.Y.Ch.1817); *In re Wachter,* 299 Pa. 153, 149 A. 315 (1930); *In re Dixon's Estate,* 9 Pa. D. & C. 79, 80 (1927), G.W. Field, *The Legal Relations of Infants, Parent and Child, and Guardian and Ward,* § 140 (1988). *See also Jain v. Priest,* 30 Idaho 273, 283, 164 P. 364, 367 (1917); *Brown v. Huntsman,* 32 Minn. 466, 467–468, 21 N.W. 555, 556 (1884); *Nicoll v. Trustees of Huntington,* 1 Johns. Ch. 166, 173 (N.Y.Ch.1814). *But cf. Evans v. Johnson, supra,* 39 W.Va. at 306, 19 S.E. at 625 (following the early English common law principle that ordinarily a guardian cannot resign).

Moreover, the authorities, as well as common sense, support the position that ordinarily it is in the best interests of the minor to permit a guardian to resign when the guardian is unwilling to continue serving in that capacity. Commenting upon a case where the co-guardians submitted their resignations because they did not wish to supervise their ward who planned to travel abroad, one commentator noted: "as it can never be for the infant's benefit to continue him in the care of a negligent or reluctant guardian, it is difficult to see how the court could avoid transferring the custody to another." *Macpherson On Infants, supra,* at 128. Another commentator observed (1 Schouler, *Domestic Relations, supra,* § 854 at 958–959):

"[N]umerous unforeseen emergencies may arise, so as to render the continuance of the trust improper; as if the guardian should become a confirmed invalid, or make himself obnoxious to the ward and his relations, or display a want of prudence in managing the estate not inconsistent with good intentions nor sufficiently gross to justify removing him. He might be fully aware of the advantage of a change to all parties concerned, and might desire to be relieved, provided he could withdraw with honor, and without submitting to a humiliating investigation of petty and insufficient grounds of complaint. This opportunity is afforded in allowing him to resign. So, too, the guardian's convenience, apart from all other considerations, might lead him to withdraw."

## C.

Although the authorities support the view that a court appointed guardian's petition to resign should be granted if there is good cause or if such action is in the best interests of the minor, the parties in the present case have cited no authority, and we are aware of none, holding or suggesting that acceptance of a court appointed guardian's resignation should depend upon whether the guardian has a duty to support the minor.

When one is not a natural guardian of a minor (*i.e.*, a parent), and is court appointed simply as a guardian of the person, there is no necessary correlation between the guardianship and the duty to support. One who is not a guardian may have contractually assumed the duty of child support. *See, e.g., Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980) (stepfather, upon divorce from child's mother, had by contract assumed the duty to pay a weekly sum for child support). On the other hand, one may be appointed guardian of the person of a minor simply for the purpose of making a particular type of decision for that minor. *See, e.g., Wentzel v. Montgomery Gen. Hosp., supra* (petition for appointment as guardians of a

mentally retarded minor for the purpose of consenting to a proposed surgical procedure).

A court order appointing someone in Carl's position as guardian of the person of a minor does not, without more, impose a duty of support upon the guardian. On the other hand, under circumstances where a court appointed guardian of the person of a minor may have contractually assumed a duty to support the minor, an order merely allowing the appointee to resign as guardian, or an order removing the appointee as guardian, would not necessarily relieve the former guardian of any contractual obligations which he or she might have assumed with regard to child support.

In sum, the petition by a court appointed guardian of the person of a minor to resign as guardian should be granted if there is good cause or if the resignation is in the best interests of the minor.[7] Furthermore, it is ordinarily in the best interests of the minor to permit the resignation of a court appointed guardian who is no longer willing to serve in that capacity. Finally, whether a court appointed guardian of the person of a minor should be allowed to resign does not depend upon whether the guardian might also have a duty to support the minor.

### D.

Applying the above-summarized principles to the facts of this case, it is clear that the parties and the circuit court erred in taking the position that the grant or denial of Carl's petition to resign should depend upon whether he had a duty to support the three boys under principles of equitable estoppel or contract. The grant or denial of Carl's petition in no way

---

7. Because "good cause" and "best interests of the minor" are largely overlapping concepts, this standard is not markedly different from the statutory standard governing the resignation of a guardian of property. Under § 13–220(d) of the Estates and Trusts Article and Maryland Rule V81, a petition to resign as guardian of property should be granted unless "good cause" is shown why such resignation should not be accepted by the court.

depended upon whether he may have assumed a duty to support the children. The question of child support was an issue in the previously filed and still pending divorce action, and it should be adjudicated in that action. Since the grant of Carl's petition in this case rested upon the circuit court's conclusion with regard to the child support issue, the circuit court applied an improper standard. The correct standard was whether there existed good cause for Carl's resignation or whether that resignation was in the best interests of the children.

■■■■ Ordinarily when a trial court's judgment is grounded upon an erroneous standard, we vacate the order and remand the case for the trial judge to decide the matter using the proper standard. *See, e.g., Fairbanks v. McCarter,* 330 Md. 39, 49–50, 622 A.2d 121, 127 (1993); *Monroe v. Monroe,* 329 Md. 758, 773–777, 621 A.2d 898, 905–907 (1993); *Robinson v. Robinson,* 328 Md. 507, 513, 615 A.2d 1190, 1193 (1992); *Davis v. Davis,* 280 Md. 119, 126, 372 A.2d 231, 234, *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). In addition, issues of "good cause" or "best interests of the children" should normally be resolved in the first instance by the trial court and not initially by an appellate court. *See, e.g., Fairbanks v. McCarter, supra,* 330 Md. at 49–50, 622 A.2d at 126–127; *Monroe v. Monroe, supra,* 329 Md. at 777, 621 A.2d at 907; *Domingues v. Johnson,* 323 Md. 486, 498–503, 593 A.2d 1133, 1139–1141 (1991). Finally, the circuit court in effect granted summary judgment in this case, and "an appellate court ordinarily may uphold the grant of a summary judgment only on the grounds relied on by the trial court." *Ashton v. Brown,* 339 Md. 70, 80, 660 A.2d 447, 452 (1995), and cases there cited.

■■■■ Application of the general rules concerning appellate review, set forth above, would require that we vacate the circuit court's order and remand the case for the circuit to rule upon the petition under the appropriate standards. Nevertheless, this case is somewhat unusual. Both in the circuit court and in oral argument before this Court, Mavis agreed that, except for the alleged duty of support, the petition to resign

should be granted. Mavis's counsel specifically conceded in oral argument before us that, ordinarily, a court should not force an individual to remain as a co-guardian against his or her wishes. Thus, the only dispute in this case relates to a matter which was not properly an issue, namely the duty of support. Moreover, under the circumstances—particularly Carl's unwillingness to continue serving as co-guardian and Mavis's willingness to continue as guardian—it seems clear that good cause and the best interests of the children required the granting of the petition.

In light of the unusual circumstances, we shall affirm the circuit court's order granting the petition to resign as co-guardian. Nevertheless, because of the reference to the parties' submissions in the order, coupled with the parties' interpretation of that order, we shall modify the order to make it clear that the order does not represent any adjudication whatsoever with respect to the duty of support.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY MODIFIED AS SET FORTH IN THIS OPINION, AND, AS MODIFIED, AFFIRMED. COSTS TO BE EQUALLY DIVIDED.*