736 A.2d 1121

**In the Matter of RICHARD H.**

**No. 1307, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 7, 1999.

Jules Bricker (Laura Kane, P.A., on the brief), Rockville, for Appellant, the Grandmother.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellants.

Shelly Mintz, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before MOYLAN, SONNER, ADKINS, JJ.

MOYLAN, Judge.

The appellants, Margaret A. and Alan H., challenge an Order issued by Judge Joanne T. Wills, in the Circuit Court for Montgomery County, whereby Margaret A. was denied custody of her grandson, Richard H. On appeal, Margaret A. contends:

1. that the trial judge erred in denying her motions to intervene in the custody proceeding; and

2. that the trial judge abused her discretion in refusing to grant her custody of Richard H.

Alan H., Richard's father, also contends that the trial judge abused her discretion in refusing to grant custody of Richard H. to Margaret A.

This is a very disturbing custody case involving an eight-year-old boy, Richard H., who has been severely abused for much of his life. Richard's father, Alan H., was convicted in August, 1993 of child abuse after Richard was found bruised, burned, malnourished, lethargic, unresponsive and suffering from a respiratory infection. At that time, the Department placed Richard with his paternal grandmother, Margaret A. Richard remained with Margaret A. until 1996, when he was returned to his father after being repeatedly beaten by Margaret A.'s boyfriend.

On March 27, 1997, Richard again came to the attention of the Department following the unexplained sudden death of his six-month old half-brother, Alexander. On that occasion, Richard had been *severely beaten and abused* by his father and by his stepmother, Ingrid S. Alan H. was again convicted of child abuse, as was Ingrid S., and is currently incarcerated. On May 6, 1997, the Montgomery County Department of Health and Human Services ("the Department") filed a petition in the Juvenile Court for Montgomery County asking that Richard H. be declared a Child in Need of Assistance ("CINA") due to the extreme abuse he suffered at the hands of his father, the appellant Alan H., and his stepmother, Ingrid S. Prior to the adjudication, Richard's paternal grandmother, Margaret A., filed a Complaint for Custody and Visitation. Margaret A. also filed two Motions to Intervene in the juvenile proceedings pursuant to Md. Rule 11–122(b), both of which were denied.

On May 21, 1998, an adjudication hearing was held before Judge Wills at which time Margaret A. filed a third Motion to Intervene. Judge Wills denied the Motion to Intervene, adju-

dicated Richard a CINA, allowed Margaret A. supervised visitation with Richard, and continued Richard's placement with his foster parents, Eric and Cathy Y., pending disposition.

On July 29, 1998, a disposition hearing was held before Judge Wills to determine whether Richard should remain with his foster family or be placed with Margaret A. After a full day of testimony, the trial judge ordered that Richard remain in his current foster care placement and granted Margaret A. supervised visitation. From that decision, both Alan H. and Margaret A. noted timely appeals.

Margaret A.'s first contention that the trial judge's denial of her motions to intervene improperly denied her the right to litigate with respect to both 1) the custody of Richard H. and 2) visitation is completely without merit. With regard to a party's right to intervene in a juvenile causes proceeding, Maryland Rule 11–122 provides:

**Intervention**

a. *Of right.* Upon timely application, any parent not served with original process shall be permitted to intervene for any purpose.

b. *Permissive.* Upon timely application, *any person, other than a parent,* seeking custody or guardianship of the respondent child *may be permitted to intervene* for dispositional purposes only, including the filing of a petition to review, modify or vacate a disposition order.

(Emphasis supplied).

■ The Rule clearly does not require that a party, other than a parent, be permitted to intervene. It simply provides that a trial court *may* permit a party to intervene. Thus, the trial judge in this case could have permitted Margaret A. to intervene but clearly was not required to do so.

Margaret A.'s interests, moreover, were fully represented at the disposition hearing on July 29, 1998. Margaret A. and her counsel remained in the closed proceeding and assisted counsel for Alan H., who argued that Margaret A. receive custody

of Richard H. Margaret A. also received copies of the evaluations that were made of herself and of her daughter, Karen B. Margaret A. was called to testify at the disposition hearing. We hold that Margaret A.'s interests in Richard H.'s custody were fully represented.

We are not unmoved by the appellants' argument that the rights and/or interests of a grandparent, substantive and procedural, are sometimes not adequately protected. The perennial difficulty, of course, is that even where the law may in specific instances be guilty of what seems an oversight, any proposed remedy can be counter-productive. Although in some cases it may be the interest of one or more of the grandparents that seems deserving of the law's extra solicitude, in other cases it might as readily be the interests of a stepmother or stepfather, of an older brother or sister, of even a great-grandparent, of aunts or uncles. It is for this reason that the law wisely entrusts the decision of whether to expand certain procedural rights to concerned parties other than the parents to the wise discretion of the trial judge on a case-by-case basis. In any event, it is not for us to grapple with the merits and demerits of any proposed expansion of procedural rights. That is a matter for more proper consideration by the Maryland Legislature or, at the very least, to the Court of Appeals' Standing Committee on Rules of Practice and Procedure.

██ The second contention, that the trial judge abused her discretion in denying Margaret A. the custody of Richard H., is equally without merit. An agency is not required to recommend placement with a relative when such a placement is contrary to the child's best interest. A Department need only "consider" placement with a relative. *See In re Adoption/Guardianship No.2633,* 101 Md.App. 274, 288, 646 A.2d 1036 (1994). The Court of Appeals has consistently held that grandparents have no inherent right to custody of their grandchildren. *Beckman v. Boggs,* 337 Md. 688, 655 A.2d 901 (1995); *Fairbanks v. McCarter,* 330 Md. 39, 46–47, 622 A.2d 121 (1993).

■ The law in Maryland is that a trial court's determination as to custody may not be reversed absent a showing of a clear abuse of discretion. *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 311, 701 A.2d 110 (1997); *Petrini v. Petrini,* 336 Md. 453, 470, 648 A.2d 1016 (1994) Particularly important in custody cases is the trial court's opportunity to observe the demeanor and to assess the credibility of the parties and witnesses. *Petrini,* 336 Md. at 470, 648 A.2d 1016. Thus, we must determine whether Judge Wills abused her discretion in denying custody of Richard H. to his paternal grandmother, Margaret A.

As thoroughly explained by the Court of Appeals in *Petrini:*

Child custody awards have traditionally been predicated on the "best interest" of the child involved. That which is in a child's best interest is not always easy to determine. As we pointed out in *Taylor v. Taylor* [306 Md. 290, 508 A.2d 964 (1986)]:

Formula or computer solutions in child custody matters are impossible because of the unique character of each case, and the subjective nature of the evaluations and decisions that must be made. At best we can discuss major factors that should be considered in determining [custody], but in doing so we recognize that none has talismanic qualities and that no single list of criteria will satisfy the demands of every case.

336 Md. at 468–69, 648 A.2d 1016 (Citations omitted). The Court went on to explain that:

[w]hile custody determination must be made on a case-by-case basis due to the uniqueness of the fact patterns in such disputes, factors relied upon in past cases can be used to guide the trial court's decision making process. In this regard, trial courts are endowed with great discretion in making decisions concerning the best interest of the child.

In *Hild v. Hild,* [221 Md. 349, 157 A.2d 442 (1960)], we observed:

For purposes of ascertaining what is likely to be in the best interests and welfare of the child a court may

properly consider, among other things, the fitness of the persons seeking custody, the adaptability of the prospective custodian to the task, the age, sex, and health of the child, the physical, spiritual and moral well-being of the child, the environment and surroundings in which the child will be reared, the influences likely to be exerted on the child, and, if he or she is old enough to make a rational choice, the preference of the child. It stands to reason that the fitness of a person to have custody is of vital importance. The paramount consideration, however, is the general overall well-being of the child.

*Petrini,* 336 Md. at 469, 648 A.2d 1016 (citations omitted).

After an extensive hearing on the issue of whom should be given custody of Richard H., Judge Wills, in rendering her decision, stated the following:

Richard is under the jurisdiction of this Court, as a child in need of assistance. According to Courts and Judicial Proceedings, 3–802, the purpose of the whole Juvenile Court is to provide for the care, protection, wholesome, mental and physical development of children coming within the provision of this subtitle. And to provide a program of treatment, training and rehabilitation, consistent with the child's best interest and the protection of the public interest.

Richard has suffered unspeakable abuse at the hands of his father and at the hands of his caretaker, Ingrid S. Unfortunately for Richard, this is not the first time that he was abused. He was abused previously and was under the jurisdiction of the Court.

This member of the bench obviously was not on the bench at that time, so I had no involvement with the case then. But since the adjudication in this case, I have gone back and read all those files, because I thought that it was very pertinent in my disposition in this matter.

I took judicial notice of everything that was in those files, and all the work that was done, rightly or wrongly with the Department, under the direction of the Department. The therapy that was provided to Alan H. and Ingrid S., the

therapy that was provided to Ms. A., obviously it was a major screw up. We wouldn't be here today, if the system had protected Richard the first time. It didn't protect him.

I'm determined that the system will not fail him this time. Richard is, because of his history a very, very unique, fragile and special child. I had the occasion to meet with Richard. Counsel was here ... [w]e spent approximately twenty minutes with Richard. Thank God, he has the ability to be a delightful child. . . . I found him to be, at this point in time, healthy and very happy.

I cannot help but feel, based on all the reports that I've read that is due to the position he is in now. He is in foster care, specialized foster care, because as I said before, he's a very special kid, because of what's happened to him in the past.

I have taken into consideration all of the documents that have been presented, all of the reports. I read the deposition of Dr. Sontag. Obviously I listened very carefully to all of the testimony that was presented here today.

There are clearly many different ways to interpret what people say and do. And I choose not to interpret that anyone was lying. I don't think that anyone is lying in this case. I think that people see things differently. . . . It's very clear to me that Mrs. A and her daughter, very much love Richard. But it's also very clear to me that they are not able to provide for him at this time. They do not have, what this young man needs. And this young man needs stability and he needs to be safe. He has not been safe for very much of the time in his life.

Reading reports about what happened to him, when he lived earlier with his father and Ingrid, when he was first injured then he went back with his grandmother. There were problems in the grandmother's home, there was all kinds of back biting and fighting going back and forth between Alan and the grandmother about Richard. Regardless of whose fault it is, and again, I'm not trying to place blame any place at all, the result of all of that is that

Richard ended up abused again. As I've indicated, I'm not going to allow that to happen.

He will remain in foster care, the specialized foster care program that he's in now. I will reaffirm the no contact order between Ingrid S. and Richard. He'll continue under the jurisdiction of the court, committed to the department. As I said, he's to continue in his specialized foster care placement. I will reaffirm the limited guardianship that was given to his foster parents, previously.

It is clear from the trial judge's opinion that she carefully considered all of the evidence presented, as well as the factors set forth in *Petrini,* in reaching her decision. As evidenced by the language in her opinion, the trial judge was acting in the best interest of Richard. We see absolutely no abuse of discretion in this case.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.*